THE L. L. & G. RAILROAD CO. v. A. J. CLEMMANS, *as Sheriff, &c.*

1. RAILROAD PROPERTY, *Deemed Personalty and not Realty; Road Taxes.* In 1872 the county commissioners of Johnson county levied a road tax upon the taxable property of that county. Afterward the county clerk determined the amount to be charged to the different persons, companies and corporations having property in that county, and placed the amount to be charged against the L. L. & G. Railroad Co. upon the tax-roll of that county for that year. The railroad company did not pay the amount. In February, 1873, the county treasurer issued his warrant to the sheriff of said county for the collection of said tax; and the sheriff was about to proceed to collect the same, when the railroad company commenced this action to enjoin the collection thereof, claiming that the tax could not be collected at that time, nor in that manner: *Held*, that under the tax laws in force in 1872 and in 1873 all railroad property used in operating the road, including the real estate, was treated as personal property, and that, as all road taxes on personal property for the year 1872 should have been collected at the time and in the manner that the road tax against the L. L. & G. Railroad Co. was attempted to be collected in this case, that the road tax against the L. L. & G. Railroad Co. was properly collectible at the time and in the manner it was attempted to be collected, and therefore that the railroad company cannot maintain said action.

2. INJUNCTION, *Temporary, Does not Determine Rights.* In an action brought by the county commissioners of Johnson county, against the county treasurer, the state treasurer and certain railroad companies to whom county bonds had been issued, a temporary injunction was granted, restraining said county treasurer and state treasurer from paying any interest on said bonds. While said suit was still pending, and while said temporary injunction was still in force, the proper taxing officers of said county levied, and were proceeding to collect from the L. L. & G. Railroad Co. and others, a certain tax with which to pay interest on said county bonds. The L. L. & G. Railroad Co. then commenced this action to enjoin the collection of said taxes, claiming that the same was illegal and void because of said temporary injunction: *Held*, that the granting of said temporary injunction determined no person's rights; that the tax could properly be collected while it was still in force; and therefore that the railroad company cannot maintain said action.

*Error from Johnson District Court.*

INJUNCTION, to restrain the collection of alleged illegal taxes. The facts are sufficiently stated in the opinion. The district court, at the August Term 1873, dissolved a temporary injunction previously granted, and on final hearing dismissed the plaintiff's petition and gave judgment in favor of the defendants for costs. The plaintiff brings the case here for review.

*S. O. Thacher,* for plaintiff in error:

1. There can be no levy of road taxes until the first Monday in September of each year. The county clerk, on or before the first day of April of the following year, furnishes to the township trustee a list of "all taxable property," as well as " the amount of road tax chargeable to each tract of land in their respective townships." By § 24 of the road law, (ch. 89, Gen. Stat.,) it would appear that the persons owing highway taxes have until the first day of August following to work out the tax, at the rate of two dollars per day, as provided in § 21 of said road law. It is apparent that the legislature allowed the taxes to be worked out at this high rate *per die,* as a favor to the taxpayer; but this privilege was entirely denied to plaintiff in error, and taxes for highway purposes were at once put into the tax-roll against it; never certified to the township trustees, but an enforcement sought of the same, at least one year sooner than allowed by statute. No execution could issue against it for these taxes, before 1874, if even then. The statute nowhere authorizes these taxes, if delinquent, to be put on the tax-roll of any year, and collected by execution or tax-warrant, issued by the county treasurer. Section 24 of the road law seems to have no reference to taxes on personal property.

But in any view of the case the plaintiff in error could not be deprived of the opportunity of working out its road taxes, as any other taxpayer; neither could such taxes enter into a tax-warrant, issued by the treasurer in February 1873, for

the road taxes first levied in September 1872; neither had the county clerk the power to enter the road taxes so levied at once on the assessment-roll of the county, and in the first instance payment of them be demanded by the county treasurer. No reason is shown or suggested why the same rule should not apply to the plaintiff in error in these matters as to any other taxpayer.

2. Another question arises as to its liability to pay interest on bonds whose validity was contested and in suit in the name of the county commissioners as plaintiffs, and the said Bruner as county treasurer, and Hayes as state treasurer, as defendants. The very tax Clemmans and Bruner were endeavoring to collect of this plaintiff in error, was prohibited by injunction from being paid out by Bruner. On what principle these officers seek to collect a fund from a party, where such fund is declared to be improperly raised, is not apparent. In other words, while by the strong power of a summary tax-warrant, the treasurer is collecting from the plaintiff in error this interest on county bonds, he is lying under an injunction forbidding him from paying out this same fund. What right has he, or the county board, to collect this money from the plaintiff in error as long as there are pending suits enjoining its payment? This money when paid into the treasurer is put there for a certain use. (*Meier v. McCrillus*, 4 Kas., 250.) The record discloses that the companies claiming this interest, the board of county commissioners and the county treasurer, were all in court adjudicating the right of the companies to demand interest on these bonds. Until it was settled that they had this right, the county treasurer had no power, while under the restraint of an injunction, to enforce the collection of such an enjoined revenue.

If the suits had been commenced by the county board before their levy, they would have had no power to make such a levy; but being commenced after, the whole levy for that object was necessarily affected thereby, the board acting for all the taxpayers of the county, and in that matter standing as the representative of the taxpayers, and it was the right of

each person to refuse to pay this enjoined tax. This court has recently held that equity will interfere in behalf of the county board to prevent county treasurers from paying interest on illegal county bonds. (*Gulf Railroad Co. v. Comm'rs of Miami County*, 12 Kas., 230.) The principle of this decision must be, that in this manner the county represents all the taxpayers, else the case would be inconsistent with *Meier v. McCrillus*, supra. If the suits should terminate adverse to the county, then this tax remains an enforceable lien against the persons and property on which it is levied, for it is part of the revenue law that each tax is carried out separately on the tax-roll, and the treasurer in such a case could easily give a receipt for the unenjoined taxes. When the county board enjoined the payment of this tax it was as though each taxpayer had enjoined his individual part thereof. The bonds were issued, as the record shows, without authority of law, and hence a tax to meet the interest on them was simply void. This invalid nature of the bonds had been shown in the suits mentioned in the petition, so far that the payment of any interest on them was restrained. But surely the county cannot in one breath say that the interest claimed is for void bonds, and hence the county ought not to pay, and in the next assert the interest to be due and collectible from the taxpayers. If the interest is illegal, then it is so, not for one purpose only, but for all. If there is no interest due or owing on the bonds, then there should be none enforced from the taxpayers. The county cannot be permitted to collect funds for an illegal object, and then cover the same into its general funds. The right to tax and collect revenue is confided to the counties only in specified cases, and the power to use this function is not to be enlarged by any construction whatever. The statutory power will be confined to a fair construction of the law creating it. Under our statutes no power is given a county to collect funds for the payment of interest on bonds unauthorized by law. These propositions are fundamental. They stand upon authority and reason.

The county asserting the illegality of these bonds, and

instituting suit to set them aside, and having injunction to restrain its officers from paying out any funds on the interest due on the bonds, is precluded from turning around and alleging the validity of the bonds and the legality of the tax sought to be collected in payment of the interest on them.

*Frank R. Ogg*, for defendant in error:

The questions presented by plaintiff's petition have been passed upon and adjudicated by this court in the case of the *Gulf Railroad Co. v. The Treasurer and Sheriff of Bourbon County*, 7 Kas., 210, and affirmed by the court in the case of the same *Railroad Company v. Blake, Treasurer*, and *Clemmans, Sheriff of Johnson County*, 9 Kas., 489. These cases are decisive of this.

In this case there are no strong equitable grounds existing which would authorize the interference of a court of equity, and the court did not err in sustaining defendant's demurrer to plaintiff's petition. 2 Kas., 454; 27 Ind., 12.

The opinion of the court was delivered by

VALENTINE, J.: This was an action to enjoin the collection of two certain taxes. The defendant demurred to the plaintiff's petition on the ground that the petition did not state facts sufficient to constitute a cause of action. The court below sustained the demurrer. If either of said taxes should have been enjoined, then the demurrer should have been overruled, for in that case the petition would have stated facts sufficient to constitute a cause of action. One of the taxes was a road tax of $162.62. The other was a tax of $598.55 to pay interest on county bonds issued to railroad companies. The first it is admitted is legal, but it is claimed that the collection of the same at the time and in the manner it was attempted to be collected, is illegal. The second of said taxes it is claimed is illegal and void. Both of said taxes were levied in 1872 for that year, and placed upon the tax-roll of that year. In February 1873 the defendant Bruner, as treasurer of Johnson county, issued his tax-warrant

for their collection, and the defendant Clemmans as sheriff of said county was about to collect the same, when this suit was commenced to restrain both of said defendants from collecting said taxes.

Was the attempted collection of said road tax illegal? Section 72 of the tax law reads as follows:

"The county commissioners shall meet on the first Monday in September in each year, and shall estimate and determine the amount of money to be raised by tax for county purposes. Also, all other taxes which they may be required by law to levy." (Gen. Stat., 1044.)

Sections 21 to 24 of the road law, (Gen. Stat., 905,) read as follows:

"SEC. 21. The board of county commissioners of each county may at the time prescribed by law for levying county taxes, levy a road tax of not more than three mills on the dollar on all taxable property in their respective counties, except the real estate in incorporated cities of over two thousand inhabitants; and said tax may be paid in labor, under the direction of the overseer of the district in which the property is situated, by any able-bodied man at the rate of two dollars per day.

"SEC. 22, [*as it originally was:*] It shall be the duty of the county clerk *immediately* after such tax has been levied to furnish to each township trustee a list of the taxable *real estate, and persons charged with taxes on personal property within their respective townships,* and the amount of road tax chargeable to each tract *or person;* said list to be furnished on or before the first day of *October* in each year."

"SEC. 22, [*as amended:*] It shall be the duty of the county clerk after such tax has been levied to furnish to each township trustee *of the county* a list of all the taxable property, and the amount of all road tax chargeable to each tract *of land within their respective townships;* said list to be furnished on or before the first day of April in each year." (Laws of 1872, page 355, § 6.)

"SEC. 23. The trustee of the several townships, after receiving the list mentioned in the preceding section, shall proceed to make out lists of all the taxable real estate within the various road districts, and of persons charged with taxes on personal property, with the amount of road tax chargeable to each tract of land, and deliver the same to the overseer of

such district on or before the fifteenth day of October in each year.

"SEC. 24. All road taxes remaining unpaid on the first day of August shall be returned to the township trustee. The township trustee shall before the fifteenth day of August return all such relinquent road taxes to the county clerk, who shall charge the same against the respective tracts of land on the county tax-roll of the current year."

The road tax we are now considering was levied as provided by law on the first Monday of September 1872. It is claimed that under said § 22 of the road law, as amended, the list of the taxable property and the amount of tax thereon should have been furnished to the various township trustees on or before the first day of April 1873; that under § 23 of the road law the township trustees should have furnished like lists to the various road overseers on or before October 15th, 1873; that under § 24 of the road law the unpaid road taxes should be returned by the road overseers to the township trustees, and by the township trustees to the county clerks, and that all this should be done sometime between the first and the fifteenth day of August 1874, and that the county clerk should afterward enter such delinquent road taxes on the tax-roll for the year 1874. And it is claimed that under these sections no road tax levied in 1872 could be put on any tax-roll of the county earlier than in 1874. The plaintiff claims that under said sections it had the right to pay said road tax in labor at the rate of two dollars per day for any able-bodied man, and that it had the right to do this at any time from October 15th 1873, till August 1st 1874. This claim seems very plausible, but when examined closely we hardly think it will be found to be sound. It may be that the company would have a right to pay the tax in labor; but if so, we are inclined to think it would have to do so before the treasurer should issue his warrant for its collection, and that the treasurer might issue his warrant therefor at any time after January 10th 1873. We shall now proceed to give our views upon this subject. In 1872 and in 1873 all property, real and personal, belonging to a

1. Railroad property : personalty.

railroad company, and used in operating their road, was assessed as personal property. (Laws of 1871, page 331, § 4.) And the taxes levied upon such assessment were collected in the same manner as taxes levied upon personal property. Railroad property, although it may have been real estate, was not sold by the county treasurer on the first Tuesday of May, or at any other time, to pay the delinquent taxes as other real estate was. (Gen. Stat., 1046, §§ 80, 81.) On the contrary, the county treasurer on or before the 10th of January issued his warrant to the sheriff to collect the same, and they were collected in the same manner as other delinquent taxes upon personal property. (Laws of 1871, page 334, § 11; Laws of 1869, page 339; Gen. Stat., 1059, § 123.) Railroad property was in fact under the tax laws governed by the same rules, and treated in the same manner, as personal property, although the larger portion of the same may have been real estate. As we have before seen, it was the duty of the county commissioners to levy the road tax as well as almost all the other taxes. (Gen. Stat., 1044, § 72; id., 905, § 31.) And except when otherwise provided, all the taxes levied by the county commissioners under said § 72 of the tax law, were by the county clerk immediately placed upon the tax-roll of the county for immediate collection by the county treasurer. We have already given section 72 of the tax law; and we now call attention to § 73 of said law. It reads as follows:

"Sec. 73. The county clerk, immediately after the first Monday in September, shall proceed to determine the sums to be levied upon each tract or lot of real property, and upon the amount of personal property, in the name of each person, company, or corporation, which shall be assessed equally on all real and personal property subject to the same tax, and set down each tax in a separate column. He shall complete the same, and attach his certificate thereto, and deliver it to the county treasurer on or before the first day of November, and shall charge the treasurer with the amount of the respective taxes assessed on the tax-roll." (Gen. Stat., 1044.)

In 1872 and in 1873 there was no provision in any of the statutes authorizing the county clerk to do anything with the

7—14 KAS.

road tax levied by the county commissioners upon personal property, except to immediately place it upon the tax-roll of the county for immediate collection by the county treasurer as other taxes upon personal property are collected. There was no provision authorizing the county clerk to furnish the various township trustees of his county with the amount of road tax levied upon personal property, nor was there any provision authorizing him to furnish said trustees with the names of persons charged with road tax levied upon personal property. He simply furnished said trustees with " the amount of road tax chargeable to each tract of land within their respective townships." (See section 22 of the road law as amended; Laws of 1872, page 355, § 6.) We have quoted said § 22 as it originally stood, and as amended, and have italicised those portions of each which differ from those of the other, or which are not found in the other. The differences therefore between the original section and the amended section will be obvious; and these differences will show clearly the intention of the legislature. Therefore, as all railroad property must under said tax laws be treated as personal property, and as the county clerk was not under said laws authorized to furnish to the various township trustees the various amounts of taxes levied upon personal property, or with the names of persons charged with road taxes levied upon personal property, and as said clerk was not authorized to do anything else with said road taxes except to place them upon the county tax-roll for immediate collection, it would seem to follow, under said § 73 and other sections of the tax laws, that the county clerk must put all the road taxes levied upon railroad property, as well as those levied upon personal property in general, upon the county tax-roll to be collected the same as other taxes levied upon personal property.

II. Was the tax levied to pay interest on county bonds issued to railroad companies, invalid? It will be presumed that said tax was valid, unless the contrary has been shown by the plaintiff in its petition. Have they shown the contrary? They allege that the county treasurer and state treasurer have been enjoined at the

2. Temporary injunction determines no right.

suit of county commissioners from paying any interest on said bonds. The grounds upon which the county commissioners obtained said injunction are as follows: The commissioners "set up as a fact, that said bonds and all of them are void, and issued without authority of law, and that said interest so levied on said assessment-roll of said county is wrongfully levied, and is of right not the property or moneys of said companies to which said bonds were issued." The plaintiff in the present suit does not say that said bonds are void: it merely says that the county commissioners say so in their suit. And the plaintiff in the present suit does not say that the county commissioners' suit has ever been terminated. We should judge from the allegations in the plaintiff's petition that the injunction granted to the county commissioners to restrain the county treasurer and state treasurer from paying any interest on said bonds was merely a temporary injunction; an injunction *pendente lite,* to stop the money in the hands of the county and state treasurers until it could be determined to whom the money belonged. Such an injunction determines no person's rights. Such an injunction will not prevent the county treasurer and the sheriff from collecting taxes to pay interest on said bonds. But even if said county commissioners' suit has been terminated, and said injunction were a perpetual injunction, still it might not prevent the treasurer and sheriff from collecting said taxes. The county treasurer, state treasurer, and the railroad companies to whom said bonds were issued, were parties defendant in the said commissioners' suit. Now, suppose the railroad companies had parted with all the interest they had in said bonds before said suit was commenced: are the real owners of the bonds, who were not parties to the suit, to suffer because these merely nominal parties, the county treasurer, state treasurer, and railroad companies may have allowed (possibly with their consent,) judgment for a perpetual injunction to be rendered against them? There is no allegation in the plaintiff's petition that the railroad companies owned said bonds when said suits were commenced. There is no

allegation in fact that the county commissioners alleged that said railroad companies owned said bonds when their suit was commenced. Possibly the county treasurer, the state treasurer, and the railroad companies were all very willing that injunctions should be granted, restraining the officers from paying said interest; for possibly the interests of all of them were on that side. They may all have been large taxpayers in Johnson county, without having any interest in the bonds. We decide this case however upon the belief that said injunction was only a temporary injunction.

The judgment of the court below is affirmed.

. All the Justices concurring.