## O. V. DODGE & CO. v. CHILDS & LIVINGSTON.

AGENT—*Declarations, Hearsay Evidence.* D. sold a pump to C. & L., agreeing to properly place it in a well. He sent an agent for that purpose, and while engaged with one of the purchasers in setting the pump, it accidentally fell into and destroyed the well. C. & L. brought an action against D., alleging that the accident and injury resulted from the negligence of the agent, and to sustain the same offered to prove the declarations of the agent made two hours after the accident had occurred, to the effect that the accident was the result of his own negligence. *Held*, That the declarations were mere hearsay, and inadmissible.

*Error from Barton District Court.*

THE opinion states the nature of the action, and the material facts. Judgment for plaintiffs *Child & Livingston*, for $295.90 and costs. The defendants *O. V. Dodge & Co.* bring the case here.

*Maher & Osmond*, for plaintiffs in error.

*Nimocks Bros. & Sturgis*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: This proceeding is brought to reverse a judgment obtained by Childs & Livingston, in the district court of Barton county, on the 19th day of February, 1885. It appears that Childs & Livingston purchased a pump from Dodge & Co., who were to put it in a drill-well about 230 feet deep, upon the premises of Childs & Livingston, in a good and workmanlike manner, and so that it would operate satisfactorily. Dodge & Co. sent one of their agents, named Mulks, to put in the pump. He proceeded to do so, with the assistance of Livingston, and in lowering the pipes of the pump into the well, a derrick, windlass, rope and dog were used. The manner in which the operation is performed is described by counsel as follows:

"First, the cylinder containing the lower valves was screwed to a joint of pipe 16 feet long; then the rope was 'hitched' to the other end of the joint, and by the use of the windlass and a rope passing over a pulley in the derrick, the first section was elevated into a perpendicular position, the lower end being raised just high enough to clear the mouth of the well. Then the dog through which the pipe was passed was set immediately over the mouth of the well. This dog consisted of a piece of heavy plank about one foot square, with a hole in the center large enough to allow the pipe to pass through, and an iron lever hung upon a pivot, the longer and heavier arm of the lever extending toward the hole, and when left free, reaching a little beyond the side of the hole nearest the pivot. Consequently, from its construction, when the pipe was lowered through the hole in the dog, and the lever of the

dog was left free, the longer and heavier arm would descend, and the end of it come in contact with the pipe and clamp, and press the pipe against the opposite side of the wooden plank, thus stopping the pipe in its descent into the well, and holding it firmly. The dog was made use of for the purpose of catching the pipe in case by accident it should become loose from the rope and fall. When one joint was thus lowered almost its entire length, the windlass was locked. The upper end of the joint, now about one foot above the mouth of the well, was firmly clasped with tongs made for that purpose, and the second joint was screwed on and lowered into the well. This operation was repeated until about one hundred feet of pipe had been lowered into the well. At this point, in consequence of having been unevenly wound around the drum of the windlass, the rope gave a jerk and slipped off the end of the pipe, and the dog being at that time held open by a monkey-wrench lying upon the shorter arm of the lever, the hundred feet of pipe fell into the well."

In endeavoring to take the pipe out, the tubing in the well was removed and the well caved in, causing the injury for which this action was brought. At the time of the occurrence, Livingston was operating the windlass, and Mulks was attending to the dog.

Childs & Livingston contended that it was through Mulks's negligence in the hitching of the rope on the end of the pipe and in the operation of the dog, that the pipe fell into the well; and that Livingston only worked under the direction of Mulks. On the other hand, Dodge & Co. contended that Livingston assumed to direct the operation of putting down the pipe, and furnished the appliances which were used; and further, that Mulks left the dog by the direction of Livingston and to assist him in operating the windlass, and that it was while Mulks was applying the brake to the windlass by the order of Livingston that the pipe fell.

Some time after the pipe had fallen, the parties went to a farm house about two miles distant for dinner. While at the dinner table, a conversation occurred in regard to how the pipe happened to fall into the well, and Mulks is said to have admitted that the accident was the result of his own negligence. Several persons who were present at the dinner table were

called as witnesses, and, over the objection of plaintiffs in error, were allowed to testify to the admissions of Mulks; and this is the principal error complained of.

From the claims of the parties, and the facts stated, it is obvious that the admissions of the agent Mulks are important, and perhaps were controlling with the jury in the conclusion arrived at. It is equally clear that the testimony was incompetent and inadmissible upon any ground. In general, the declarations and admissions of an agent do not bind the principal. In this case, the declarations and admissions of the agent were not made in the performance of his duty, nor in connection with the act charged to have been negligent and which formed the subject of inquiry. To be admissible, the declarations of the agent must have constituted a part of the *res gestæ*. In other words, they must stand in immediate relation and serve to explain and illustrate the particular act or acts which are in litigation. The controversy here was whether the act of Mulks or Livingston occasioned the accident and the injury. The declarations were made several hours subsequent to the happening of the accident, had no necessary connection with it, and are but statements concerning a past transaction. It is true, that Mulks afterward returned and made efforts to fish out the pipe and to properly place the pump, but the declarations complained of were not incidental nor related to any of these acts. They related only to the accident which had already occurred. The inquiry and ultimate fact sought to be proven was whether this accident was the result of the agent's negligence. The subsequent declaration of the agent regarding the transaction is not the ultimate fact to be proven, and is therefore mere hearsay. ( *U. P. Rly. Co. v. Fray,* 35 Kas. 700; *K. P. Rly. Co. v. Pointer,* 9 id. 620; *Stark v. Cummings,* 5 id. 85; *Luby v. H. R. Rld. Co.,* 17 N. Y. 131; *Bellefontaine Rly. Co. v. Hunter,* 33 Ind. 335; Wharton's Evidence, §§ 258– 267; Story on Agency, § 135, and note.)

The testimony admitted was clearly incompetent and preju-

34 — 38 KAS.

dicial, and hence the judgment of the district court must be reversed, and the cause remanded for another trial.

All the Justices concurring.