ALDACE F. WALKER AND JOHN J. McCOOK, *as Receivers of the Atchison, Topeka and Santa Fe Railroad Company*, v. CATHERINE O'CONNELL.

### No. 10603.

1. DECLARATIONS OF ENGINEER—*made soon after, attributing accident to his negligence, are hearsay.* The declarations of a railroad engineer, made two or three hours after an accident, tending to show himself to have been the negligent cause of the accident, when not offered in impeachment of his testimony, are inadmissible against the railroad company in a suit for damages for injuries or death resulting from the accident.

2. ACTION BY WIDOW FOR CAUSING HUSBAND'S DEATH—*when deceased was resident of Kansas, not maintainable without allegation and proof of non-appointment of personal representative.* The *City of Eureka v. Merrifield*, 53 Kan. 794, reaffirmed and followed.

3. AMENDMENT OF PETITION—*by supplying fatal omission, not allowed after verdict where exceptions have been preserved to trial errors in overruling objections based on such defect.* When a petition omits an averment necessary to show a right of action in the plaintiff, and the defendant at every proper and available opportunity throughout the trial objects to it and to the reception of evidence under it because of such omission, it is too late after verdict in plaintiff's favor and the filing of a motion for new trial by defendant, to cure the defective petition and the error of receiving evidence under it, by amending it to conform to the facts proved.

Error from Cowley District Court.   J. A. Burnette, Judge.   Opinion filed April 9, 1898.   *Reversed.*

*A. A. Hurd* and *Stambaugh & Hurd,* for plaintiffs in error.

*Madden & Buckman,* for defendant in error.

DOSTER, C. J.  This was an action brought against the receivers of the Atchison, Topeka & Santa Fe Railroad Company by Catherine O'Connell, as widow of John O'Connell, to recover damages for the alleged negligent killing of her husband.

John O'Connell was an employee of the Receivers. He was a bridge watchman, and his business was to look out for the safety of a couple of bridges, situated between the towns of Grand Summit and Grenola, on the Southern Kansas division of the railroad.   These bridges were about two miles apart, and it was the duty of the deceased to visit and inspect them after the passing of trains.   In doing so, he rode what is called a tricycle car, propelled by himself.  For many years he was in the habit of visiting these bridges between six and seven o'clock in the morning.   On November 5, 1894, shortly after six o'clock, while riding his tricycle car on his accustomed morning trip eastward, he was run into from behind and killed by an extra or special train.   The usual allegations and

counter-allegations of negligence were made in the pleadings. A general verdict and special findings were returned in the plaintiff's favor. From the judgment rendered thereon the defendant prosecutes error to this court.

The first claim of error relates to the admission of testimony. Upon the occurrence of the accident, the train was stopped and the body of the deceased was left in charge of a brakeman, while the train and remainder of the trainmen ran on to Grenola, about three miles distant, from which, between two and three hours later, they returned with the coroner and a jury. A witness named Long was one of this party. He testified, over the defendant's objections that, upon arriving at the scene of the accident, the engineer pointed out to him the place where he first saw the deceased on the track ahead of him, and also the place where he ran his engine into him ; and that, upon measurement between these two places, he, the witness, found the distance to be three hundred and ninety-five feet. According to other testimony, this was ample distance in which to stop the train, and of course it afforded ample time to whistle and sound the bell as alarms. This testimony of the witness Long was not given in impeachment of anything to which the engineer had testified, but was offered and received upon the making of the case in chief by the plaintiff, and it was, therefore, flagrantly erroneous. The statements of the engineer were no part of the *res gestæ*. They were not made contemporaneously with, nor in immediate sequence upon, the accident. They were narrative of a past transaction, having been made two or three hours after the event occurred. They were hearsay of the baldest kind, and were not made by one who stood in such a representative relation to the receivers as make

1. Declarations made after accident inadmissible, when.

his admissions binding upon them. *Kansas Pacific Rly. Co. v. Pointer*, 9 Kan. 620; *Dodge v. Childs*, 38 Kan. 526, 16 Pac. 618.

Notwithstanding the admission of this testimony, a majority of the court are of the opinion, in view of the findings of the jury, that it was not prejudicially erroneous. These findings were that the engineer did not observe the deceased until about sixty feet distant from him. The jury either did not believe the witness Long as to what he said the engineer told him, or, if they did believe him, believed the fact to be othwise than as stated to him. Consequently, the negligence found against the engineer did not consist in failing to stop the train or sound the alarm after the danger to the deceased was observed, but it consisted in failing to discover the danger as soon as it might have been discovered.

The action was brought under section 419 of the Civil Code, chapter 95, General Statutes of 1897, by the plaintiff as the widow of John O'Connell. In her petition she alleged that the deceased was a resident of this State, but she did not in the first instance allege the non-appointment of an administrator of his estate. Before the trial the defendants moved for judgment upon the pleadings, and also at the commencement of the trial they objected to the introduction of evidence under the petition. These motions were overruled; but the question involved under them again arose upon demurrer to the plaintiff's evidence after she had rested her case. This demurrer was overruled; but, before the defendants proceeded, the plaintiff by leave of court reopened her case, and, over the defendants' objections, testified that no administrator of her husband's estate had been appointed. The same question again arose upon a request by the defendant to in-

2. Non-appointment of personal representative necessary, when.

struct the jury that plaintiff must allege and prove, if John O'Connell was a resident of the State, that no administrator of his estate had been appointed.

The claim made by the defendants, in support of these various motions and objections and the request to instruct, was that a right of action for damages for death is statutory, and cannot be maintained except under the statutory conditions; that in such case a widow's right to sue is conditioned upon the non-appointment of an administrator of the decedent's estate; and that, therefore, the petition, which in this instance lacked the averment of non-appointment, failed to bring the case within the statutory terms. This claim was well taken and should have been sustained. It was so held in *City of Eureka v. Merrifield* (53 Kan. 794, 37 Pac. 113). The decision of that case is well sustained by other like authorities, its reasoning is entirely satisfactory to us, and it applies to all the various instances in which the rule was invoked in this case.

After successfully resisting all the defendant's attempts to secure recognition of the rule, the plaintiff finally moved for leave to amend her petition to conform to the facts proved, by alleging the non-appointment of an administrator of the decedent's estate. This motion was allowed and the amendment made. However, it was not made, nor the motion therefor filed, until five days after the close of the trial, the return of the verdict, and the discharge of the jury, and two days after the motion for new trial was filed. It was made, however, before the rendition and entry of judgment on the verdict and findings.

3. Amendment to petition not allowed after verdict, when.

While the statute (Civil Code, § 139) allows amendments to be made either before or after judgment to conform to the proof of facts, and while this stat-

ute should be liberally construed and a liberal exercise of the right of amendment allowed, we are clear that the amendment in question should not have been permitted at the time and under the circumstances disclosed in this case. It will be observed that, at every proper and available opportunity, the attention of the court was called to the vital defect in the plaintiff's petition and a challenge made to her right to proceed because of such defect. In particular, the court had been requested to instruct the jury to find for the defendants, because of the lack of the necessary allegation in plaintiff's petition to entitle her to recover. Exceptions to the court's rulings were made as each successive phase of the question arose and was disposed of. These rulings and exceptions showed substantial and reversible error, within the previous decisions of this court.

At no time after verdict and before the amendment was made could any question exist as to the right of the defendants to an order setting aside the verdict and findings and awarding a new trial. We think it was not within the power of the court, at the late time this amendment was proposed, to allow it to be made, and through its retroactive effect to cure the substantial errors which had been committed through lack of its earlier making. To such effect are the authorities. "A motion, after the close of the evidence to conform the pleadings to the proof can never be granted where the admission of the evidence was promptly objected to when it was offered, upon the ground that it did not tend to support the allegations in the pleadings." 1 Encyc. Pleading and Practice, p. 585. We have examined many of the authorities cited under the above quotation and find that they fully support the text.

We cannot conjecture whether an administrator of

the estate of John O'Connell had been in fact appointed, and we have no way of ascertaining the fact except by the record before us; and that was silent upon the question until the amendment was made, long after all opportunity for the defense to be heard upon it had passed. Had an issue been made upon this question in proper time and form, it might have been that the defendants could have proved the making of an appointment. We cannot assume a lack of good faith on their part in insisting that such issue be framed and that they be heard upon it. We cannot assume that their contention is a technical and vexatious insistence upon a mere matter of form readily ascertainable against them. As shown in *City of Eureka v. Merrifield*, supra, it is matter of substance, and not of form, and what the fact may be is impossible for us to know.

Many other claims of error are made. One of these relates to the admission of evidence of the engineer's failure to sound the alarm at a highway crossing, something over two miles before reaching the point where the accident occurred. Others relate to the giving of certain instructions, and the refusal of requests for certian instructions, and lastly, the failure of the evidence to prove a case of negligence against the receivers. This last claim is untenable. Not being under the necessity of determining the others, we have not closely examined them. Some of them, upon casual consideration, present the appearance of merit, but, being subject to re-examination by the trial court, no definite opinion concerning them is expressed by us.

The judgment of the court below is reversed and a new trial ordered.