Lillie M. Johnson *et al.* v. The McLain Investment Company.

No. 15,593.   (100 Pac. 52.)

SYLLABUS BY THE COURT.

1. Evidence—*Setting Out a Fire—Admissions by an Agent—Spontaneous Exclamations—Hearsay.* A barn was destroyed by a fire which originated the day before on a neighboring ranch, whose manager with others discovered the danger while the fire was at some distance and vainly endeavored to save the building. In an action by the owner of the barn against the owner of the ranch, testimony that while the barn was burning the manager said that he had himself set out the fire was not competent evidence that he had in fact done so. The declaration of the manager was not rendered competent by reason of his being the defendant's agent, for it was a mere narration of a past transaction, not relating to, explaining or characterizing any act in which he was then engaged; and the circumstances do not indicate that it was such a spontaneous exclamation made under the stress of nervous excitement that its truth could be presumed without being sworn to.

Error from Barton district court; Jermain W. Brinckerhoff, judge. Opinion on rehearing, filed February 6, 1909. Affirmed. (First opinion not reported.)

*Russell & Russell,* and *Osmond & Cole,* for plaintiffs in error.

*D. A. Banta, J. W. Clarke, Boyle & Howell,* and *Guthrie & Smith,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: Lillie M. Johnson and others brought an action against the McLain Investment Company, alleging that one Frank Jones, an agent of the defendant in charge of a ranch which it owned, had negligently allowed a fire to spread from this ranch to premises of the plaintiffs, where it destroyed a barn. A demurrer to the plaintiffs' evidence was sustained and they brought the case here. The question principally argued at the hearing was whether the evidence showed such relations between the company and Jones as to render it liable for the results of his negligence, and this court, finding that that question should be answered in the affirmative, ordered a reversal of the judgment.

In a petition for a rehearing counsel for the defendant urged that no competent evidence had been introduced tending to show that Jones himself had anything to do with the setting out of the fire. This contention had been made in the brief, but in such close connection with the claim that there was no evidence to connect the company itself with the fire that it escaped special attention. To give opportunity for an examination of this phase of the matter a rehearing was granted.

There was evidence that the fire started upon the land of the defendant and spread to that of the plaintiffs, but the only testimony tending to show what occasioned it was that of two witnesses, who said that on the morning the barn was burned they came to the scene of the fire, which was then about three hundred yards from the barn, and found Jones and another man trying to check it. They gave their assistance, but all efforts proved unavailing and the barn was destroyed. The substance of the evidence under consid-

eration was embodied in this question and answer, to which objections were duly made:

"Ques. I will ask you . . . to tell the jury what, if any, statements were made by Mr. Jones at the time of the burning of the barn and while you were there with reference to the origin of the fire and the cause of its spreading? Ans. He told me he was burning off some weeds and rubbish in a draw that runs down on the northeast corner of the pasture and the fire broke over in the grass in the pasture and burned it off, which he wanted to burn off anyway, and that night he thought the fire was safe and went home, and the next morning he looked down there and saw the smoke, and riding down there he found the fire was going toward this barn of Mrs. Johnson's, and he goes back and he and his man and a team goes down and tries to prevent the fire from burning the barn."

It is clear that this testimony was not rendered competent to prove the origin of the fire by the fact that the unsworn statement it introduced was that of the defendant's agent, for the statement was not made in the course of the agent's employment. It had no reference to, nor did it explain or characterize, any act in which he was engaged; it was a mere narration of a past transaction. (2 Wig. Ev. 1078; *Kansas Pacific Rly. Co. v. Pointer,* 9 Kan. 620, 630; *U. P. Ry. Co. v. Fray,* 35 Kan. 700, 704, 12 Pac. 98; *Dodge v. Childs,* 38 Kan. 526, 529, 16 Pac. 815; *Mo. Pac. Rly. Co. v. McCally,* 41 Kan. 655, 21 Pac. 574; *Coal Co. v. Dickson,* 55 Kan. 62, 70, 39 Pac. 691; *Mo. Pac. Rly. Co. v. Johnson,* 55 Kan. 344, 347, 40 Pac. 641; *Railroad Co. v. Osborn,* 58 Kan. 768, 51 Pac. 286; *Railroad Co. v. Cattle Co.,* 59 Kan. 111, 115, 52 Pac. 71; *Walker v. O'Connell,* 59 Kan. 306, 308, 52 Pac. 894; *Robins v. Murdock,* 69 Kan. 596, 77 Pac. 596; *Railroad Co. v. Burks,* 78 Kan. 515, 96 Pac. 950; *Case v. Pulsifer, ante,* p. 176.)

There is, however, another theory upon which a plausible argument can be made for the admission of this conversation as evidence that Jones set out the fire—namely, that it falls within the exception to the

rule excluding hearsay for which in default of a better term Doctor Wigmore adopts the name "spontaneous exclamations." As that writer points out (3 Wig. Ev. § 1745), the principle upon which this exception depends is entirely distinct from that back of the rule admitting evidence of spoken words regarded as verbal acts, but has been so often confounded with it as to produce much confusion in the application of each. Evidence of what a person 'has said when not under oath, if offered for the purpose of proving that certain words were spoken by a certain person under certain circumstances, and not for the purpose of proving some fact asserted thereby, is not objectionable as hearsay. It may or may not be admissible, according to whether the fact that such language was used sheds any light upon the matter under investigation; but it is not hearsay, for the witness on the stand testifies to the ultimate fact to be proved. But evidence that Jones said he started the fire, offered to show how it did in fact originate, is plainly hearsay, and admissible only if the circumstances create an exception to the ordinary rule. The exception referred to proceeds upon the ground that words spoken under the impulse of strong nervous excitement may by reason of their spontaneous, impulsive nature be regarded as presumably free from intent to deceive, and therefore be entitled to be heard and weighed, although lacking the credit that comes from the administration of an oath. Its nature and limitations are fully discussed in the sections of Wigmore's work immediately following that just cited. It is there said:

"There was a time when the state of the judicial precedents was such that no established exception of this tenor could yet be said to exist. But now, and for a generation past, it does exist, under one or another guise of phraseology." (§ 1746.)

In section 1750 the requirements necessary to take a case out of the ordinary rule and render the hearsay evidence admissible are stated thus:

"There must be some shock, startling enough to pro-
duce this nervous excitement and render the utterance
spontaneous and unreflecting. . . . The utterance
must have been before there has been time to contrive
and misrepresent, *i. e.,* while the nervous excitement
may be supposed still to dominate and the reflective
powers to be yet in abeyance."

If these tests are accepted they fail to establish the
competency of the evidence under consideration. True,
in order for the exception to apply, the utterances need
not be exactly contemporaneous with the occurrence of
the exciting cause, nor be made within any definite
time thereafter; and often a large discretion must be
given the trial court in accepting or rejecting the prof-
fered evidence. But here the burning of the barn was
hardly such a sudden catastrophe as to paralyze the re-
flective faculties of a witness and render him unable
or unlikely to contrive and misrepresent concerning his
connection with it, if otherwise he would be disposed
to do so. The destruction of the barn was seen to be
inevitable for an appreciable time before the flames
reached it. There was abundant time and opportunity
for Jones to reflect and invent before he gave his ver-
sion of the matter. The fact that his statements, which
were not exclamatory and contained nothing to sug-
gest spontaneity, tended to fix liability upon his em-
ployer did not affect the matter one way or the other.
If what he said was admissible his statements would
have been equally competent if he had attributed the
origin of the fire to some other source.

In *The State v. Petty,* 21 Kan. 54, the judgment was
reversed because a witness was permitted to testify
that the wife of a man who was murdered in her pres-
ence told him an hour afterward that the defendant
was one of the assassins. In *The State v. Pomeroy,*
25 Kan. 349, a conviction on a charge of assault with
intent to kill was set aside because the trial court ad-
mitted evidence of declarations made by the complain-
ant in three to five minutes after the time he claimed

the assault had been made. In *Walker v. O'Connell,* 59 Kan. 306, 52 Pac. 894, a watchman riding on a railroad tricycle was run into by a train and killed. A judgment for his widow against the receivers operating the railroad was reversed because declarations of the engineer made two or three hours after the accident were admitted. In none of these cases, however, was the principle of "spontaneous exclamation" as an independent ground of admissibility pressed upon the attention of the court. In each of them there was more room for its application than in the present instance.

An extensive collection of cases illustrating the principle, in section 1750 of the Supplement to Wigmore on Evidence, shows that it is most often applied where the litigation grows out of a violent death or serious personal injury. Each decision must depend largely upon the special circumstances presented. Without attempting to frame a general rule on the subject the court is of the opinion that to say that the declarations here under consideration were competent to prove the facts to which they related would be too great a relaxation of the rule requiring testimony to be given under the sanction of an oath, and would make the manufacture of evidence too easy and safe.

As the evidence—disregarding the incompetent portions—has no tendency to show that Jones started the fire, the demurrer to it was properly sustained. The judgment of the district court is affirmed.