KUCHLER *et al.* v. WEAVER.

No. 2195, Okla. T.　Opinion Filed March 9, 1909.

(100 Pac. 915.)

1. **APPEAL AND ERROR—Modifying Temporary Injunction—Proceedings in Lower Court—Law of Case.** An order modifying a temporary injunction, or such interlocutory order, is not **res judicata,** even after it is affirmed by the appellate court, but the whole subject-matter may be retried and reviewed on the final hearing of the case.

2. **PLEADING—Appeal and Error—Amended Pleadings—Discretion of Court—Review.** Permission to file amendatory pleadings rests largely within the discretion of the trial court; and, unless there is a clear abuse of that discretion, its ruling will not be disturbed.

　2a.　The plaintiff having attempted to plead a cause of action under sections 624, 626 (chapter 13, art. 10, secs. 134, 136) Wilson's Rev. & Ann. St. 1903, but failing to allege, under the requirements of section 626, that he was the owner of lots within the corporate limits of such city, or within such addition; he having also pleaded in his petition facts constituting a cause of action under the common law, so as to entitle him to an injunction to abate a nuisance; the trial court having modified the temporary injunction so as not to allow him all the relief prayed for, and to which he would have been entitled had he not defectively stated his cause of action under the purview of said sections 624 and 626, and having appealed same to the Supreme Court of the territory of Oklahoma, where it was affirmed—before final trial in the lower court it was within the discretion of the trial court to permit him to amend his original petition so as to bring such cause of action, as it appears from the pleadings it was so intended, within the purview of section 626, **supra.**

3. **APPEAL AND ERROR—Harmless Error—Pleading—Motions.** The defendants having failed to particularize and specify the matters and facts supposed to constitute each separate and distinct cause of action, so that the court might act intelligently thereon, and having admitted in their answer the facts as alleged in the amended petition, entitling the plaintiff to the relief prayed for, the action of the trial court in overruling the motion to separate the different causes of action, and number same, will not be disturbed.

4. **STATUTES—Implied Repeal by Repugnant Act.** Sections 624 and 626, Wilson's Rev. & Ann. St. 1903, (article 11, c. 15, St.

Okla. 1893), were not repealed by section 4, c. 7, p. 107, Sess. Laws 1903.

5.    HEALTH—Regulation of Slaughter—Police Power.  Section 624 Wilson's Rev. & Ann. St. 1903, prohibiting the maintenance of a slaughter house within one-half mile of the corporate limits of a city of the first class, etc., is a legitimate exercise of the police power upon the part of the Legislature.

(Syllabus by the Court.)

*Error from District Court, Kay County.*

Action by John F. Weaver against Henry Kuchler and another. Judgment for plaintiff, and defendants brought error to the Supreme Court of the territory of Oklahoma, whence the cause was transferred to the Supreme Court of the state of Oklahoma. Affirmed.

In the fall of 1900, the plaintiffs in error leased 3 acres of land in the S. 1/2 of the S. E. 1/4 of the N. E. 1/4 of section 22, township 28 N., range 2 E., of the Indian Meridian, in Kay county, Okla. T., and located a slaughterhouse thereon, and used it continuously for that purpose until restrained by a temporary writ, issued in a certain action instituted in the district court of Kay county, Okla. T., on the 25th day of October, 1905, by John Weaver, as plaintiff, the defendant in error in this court, against Henry Kuchler and Amelia Kuchler, as defendants, the plaintiffs in error in this court. In the fall of 1905 said defendants purchased 20 acres of land, including said 3 acres, for the purpose of having a suitable place to feed and keep their live stock in conjunction with their slaughterhouse, the location of which was within less than half a mile from the corporate limits of the city of Newkirk, and of a tract of land platted into lots and blocks as College addition to said city, and within less than half a mile of lands platted to be sold as residence lots, and which were actually sold for that purpose.

The plaintiff resided with his family about three-eighths of a mile from the defendants' slaughterhouse on the S. E. 1/4 of section 27, township 28 N., range 2 E., of the Indian Meridian, a tract contiguous to defendants' 20 acres, and outside the corporate

limits of the city of Newkirk and its additions. A creek, called Spring creek, ran through and across the premises of both parties, the plaintiff's dwelling house being downstream from the defendants' slaughterhouse, and situated about 20 rods back from the creek. Near the dwelling house is a spring, from which plaintiff and his family procured their water for family purposes. Plaintiff averred the location of defendants' slaughterhouse to be within less than half a mile from the corporate limits of the city of Newkirk, and from a tract of land platted into lots, etc., and of special injury to himself, in that defendants permitted to remain upon the premises, in and near the slaughterhouse and creek, the offal, refuse, and unsalable portions of the animals slaughtered, a part of which, through the creek, becomes scattered over and upon his premises, causing the water in the spring to become unwholesome and unfit for use, and that the decay and decomposition on the premises of both parties creates a foul, unwholesome stench and odor around his dwelling house, endangering the health of plaintiff and his family.

A permanent injunction against the defendant from using their premises for slaughterhouse purposes was prayed for, and a temporary restraining order issued out of the probate court of Kay county on the 25th day of October, 1905, the date of the filing of the petition in said action in the district court. On the 20th day of November, 1905, the defendants filed their answer, which contained a general denial; also a demurrer to that part of plaintiff's petition alleging the location of defendants' slaughterhouse to be within less than half a mile from the corporate limits of the city of Newkirk and its additions. On the 26th day of November, 1905, the defendants filed a motion to dissolve the temporary writ, upon the grounds as set forth in their answer, which was attached to and made a part of said motion. A partial hearing was had on the 1st day of December, 1905, and both parties ordered to submit additional evidence in the form of affidavits. On the 30th day of December, 1905, the matter came on for final hearing, and the court rendered judgment modifying

the temporary order issued, and permitting the defendants to operate their slaughterhouse, but enjoining them from permitting any offal, refuse, or unsalable matter of said business in any manner to be conducted into the stream running through the defendants' slaughterhouse yard, and enjoining said defendants, their agents, and employes, from permitting any offal or refuse matter to accumulate in, about, or near the said slaughterhouse premises, and from permitting any bones, carcasses, or other objectionable matter resulting from the slaughter of cattle and hogs at said slaughterhouse to remain and decay upon any part of said slaughterhouse premises.

From the judgment modifying the temporary order the plaintiff appealed to the Supreme Court of the territory of Oklahoma, and on the 5th day of September, 1906, the order of the trial court permitting the defendants to conduct and operate their slaughterhouse, but restraining them from such usage as to create a nuisance to the plaintiff or the public, was affirmed on the ground that it was not averred that the plaintiff was the owner of any real estate, as required by section 624, 626, Wilson's Rev. & Ann. St. 1903 (chapter 15, art. 11, §§ 1, 3, St. 1893), and therefore did not bring himself within the provisions of said chapter in order to have such nuisance as was declared against therein abated, it being provided in said sections that "it shall be unlawful for any person to maintain a slaughterhouse within less than one-half mile of any tract of land platted into lots and blocks as an addition to any town or city within the territory of Oklahoma, or to maintain such slaughterhouse within one-half mile of any tract of land platted into acre tracts for the purpose of being sold for residence and in which tracts of land have actually been sold for residence purposes," and that the maintaining of any slaughterhouse in violation of the provisions of said act is declared to be a nuisance, and any persons owning real estate within any such addition, or within lands platted and set apart to be sold for residence purposes, may maintain an action in the

courts to abate such nuisance, and to enjoin its continuance. *Weaver v. Kuchler*, 17 Okla. 189, 87 Pac. 600.

On the 28th day of September, A. D. 1906, after the Supreme Court had affirmed said judgment, the plaintiff made application to the district court for leave to file an amended petition in said cause, which was granted, a portion of said order being in words and figures as follows:

"This cause came on for hearing on application of the plaintiff for leave to file an amended petition herein, setting forth in said amended petition that the plaintiff was, at the time of the bringing of the action and the filing of his original petition, the owner of lots eleven (11), twelve (12), and thirteen (13) in block eight (8), lots one (1), two (2), and three (3) in block twenty-one (21), lot nine (9) in block fourteen (14), and lot one (1) in block twenty-three (23), all situated in the Academy addition to the city of Newkirk, and within the corporate limits of said city."

To the granting of said order defendants objected and duly excepted. The amended petition was accordingly filed on the same day. On the 29th day of September, A. D. 1906, defendants filed their motion in said cause, in words and figures as follows:

"Come now the defendants, and move the court to require the plaintiff to separately state and number his two causes of action attempted to be set forth in his amended petition filed herein."

Said motion was overruled by the court, defendants saving their exceptions. On the 11th day of October, A. D. 1906, the plaintiff filed his application for an injunction against said defendants. On the 20th day of October, A. D. 1906, the defendants filed their answer, setting up that on the 25th day of October, A. D. 1905, the plaintiff filed his petition, and caused summons to issue thereon against the defendants, and each of them, which was duly served; that pursuant thereto defendants, on November 20, A. D. 1905, filed their answer to said petition, and thereby and therein joined issue with the plaintiff as to the matters and facts in said petition contained; that on the 28th day of November, A. D. 1905, the defendants filed their motion to dissolve the temporary injunction theretofore granted by the judge of the

probate court, acting in the absence of the district judge, and cause notice of the hearing of said motion to be served on plaintiff, as provided by law; that said cause having been heard, the district court rendered its judgment, as hereinbefore appears in the statement of facts.

Defendants further alleged that each and all of the matters and facts charged and alleged in plaintiff's amended petition existed at and prior to the filing of their original cause of action, and that the judgment of the court therein is pleaded as a bar to the matters and facts set out in the plaintiff's amended petition, that no new facts are pleaded in said amended petition that did not exist, and that were not well known to the plaintiff at and prior to the time of the filing of his original petition in this cause, and that the plaintiff is therefore estopped from recovering any relief as prayed for in his amended petition. Defendants further deny each and every allegation in said petition, except they admit that they own and control the S 1/2 of the N. E. 1/4 of the N. W. 1/4 of section 27, township 28 N., range 2 E., of the Indian Meridian, in Kay county, Okla., and that said premises are located and situated immediately north of, and contiguous to, the premises owned and occupied by the plaintiff; that the city of Newkirk, Okla. T., is a city of the first class, organized and existing under and by virtue of the laws of the territory of Oklahoma, and that the land described and owned by defendants is situated within less than one-half a mile from Academy addition to said city of Newkirk; that the plaintiff is at this time, and was prior to the filing of his original petition, the owner of the lots described in his amended petition, which lots are located in the Academy addition to said city of Newkirk.

Defendants further admit that a creek, called Spring creek, runs through the premises of the plaintiff and defendants, as set out in plaintiff's amended petition, and that defendants have erected, maintain, occupy, and operate, a slaughterhouse on the premises owned and controlled by them, and that said defendants kill and butcher on said premises, and in the slaughter-

house, beeves, hogs, etc.    The defendants further admit that they are engaged in the retail butcher business in the city of Newkirk, and do a large and ·extensive business and since the filing of the mandate set forth in their first defense, all of their animals killed for their butcher business are slaughtered on their premises above described.    The defendants further allege that they erected their slaughterhouse, and were using the same as such, slaughtering animals for their butcher trade, some two months prior to the time the plaintiff purchased the tract of land aforesaid adjoining the premises of the defendants on the south, and more than two months prior to the time the plaintiff commenced to occupy said land; that said slaughterhouse was erected, operated, and maintained by the defendants on said premises long prior to the platting of the aforesaid lots and blocks known as College or Academy addition to the city ·of Newkirk, and long prior to the time the plaintiff purchased said lots in the Academy addition to the city of Newkirk.    The defendants further allege that they have made valuable and lasting improvements on the land occupied by them for slaughterhouse purposes long prior to the time that the Academy addition was platted into lots and blocks, and long prior to the time that the plaintiff purchased said lots in said addition.    Defendants further allege that since the dissolution of the injunction herein, they have placed upon· said slaughterhouse grounds other valuable and lasting improvements, and placed the same there prior to the time of the filing of plaintiff's amended petition.

The defendants further allege that the statute under which this suit is brought, to wit, article 11, c. 15, St. 1893 (Wilson's Rev. & Ann. St. 1903, §§ 624, 626), was repealed by section 4, c. 7, p. 107, Sess. Laws 1903, that said statute is in conflict with the power to regulate and prevent nuisances given to cities of the first class, and that said statute, to wit, article 11, c. 15, St. 1893 (Wilson's Rev. & Ann. St. 1903, §§ 624, 626), is void, under the fourteenth amendment to the Constitution of the United States.

On the 24th day of November, A. D. 1906, the court granted a temporary injunction on said amended petition, as prayed for, and on the 12th day of April, A. D. 1907, the same was made perpetual. An appeal was duly prosecuted to the Supreme Court of the territory of Oklahoma, and, by virtue of the provisions of the Enabling Act and Schedule to the Constitution, is now properly before this court for review.

*C. L. Pinkham, W. S. Cline*, and *Claude Duval*, for plaintiffs in error, contended the amendment should not have been allowed since it pleaded a statutory nuisance, whereas the original petition alleged common-law grounds: 1 Encyc. Pl. & Pr. 556, Note 2; *Snyder v. Harper*, 24 W. Va. 206. On question of *res judicata: Kaufman v. Schneider*, Ill. App. 262; *Austin v. Walker* (Iowa) 16 N. W. 65. On the question of police power: *Yates v. Milwaukee*, 10 Wall. 505; *Du Bois v. Budlong*, 15 App. Pr. N. Y. 445.

*Moss & Turner*, for defendant in error.—The amendment presented no new cause of action, and its allowance was clearly within the discretion of the court: 1 Enc. Pl. & Pr. 524, 565. On question of *res judicata: Herring v. Wiggins*, 7 Okla. 312. On question of repeal by implication: *Carpenter v. Russell*, 13 Okla. 277. On scope of the police power: The *Slaughter House Cases*, 16 Wall. 36; *City of N. O. v. Stafford*, 27 La. Ann. 417; *Stone v. Mississippi* (U. S.) 25 L. Ed. 1079.

WILLIAMS, J. (after stating the facts as above). The following questions are raised in this record: (1) Whether or not the modification of the first temporary injunction issued in this case by the district court, and the affirmance of that judgment by the Supreme Court, was *res judicata* against the defendant in error at the time the amended petition in said cause was filed and the second temporary injunction issued and made final. (2) Was it proper to allow the defendant in error to file his amended petition in the court below? (3) Should the motion of the plaintiffs in error to require the defendant in error to separately state and number his alleged different causes of action have been over-

ruled? (4) Were section 624, 626, Wilson's Rev. & Ann. St. 1903 (chapter 15, art. 11, §§ 1, 3, St. Okla. 1893), repealed by section 4, c. 7, p. 107, Sess. Laws 1903? (5) Are sections 624, 626, Wilson's Rev. & Ann. St. 1903 (chapter 15, art. 11, §§ 1, 3, St. Okla. 1893), prohibiting the maintenance of a slaughterhouse within half a mile of the corporate limits of a city of the first class, a legitimate exercise of the police power upon the part of the Legislature?

1. In the case of *Herring et al. v. Wiggins, County Treasurer,* 7 Okla. 314, 54 Pac. 483, it is held that orders discharging or modifying an attachment or a temporary injunction are not a final determination of the rights of the parties, but are only interlocutory, and the entire subject-matter is subject to determination upon the final trial of the cause. The case of *Herring et al. v. Wiggins, supra,* has been followed and approved in the case of *School District v. Eakin et al., ante,* p. 321, 100 Pac. 528. In the case of *Shelby et al. v. Ziegler,* 22 Okla. 799, 98 Pac. 989, section 4463, St. Okla. 1893 (Wilson's Rev. & Ann. St. 1903, § 4759), so far as it relates to an order discharging or modifying an attachment being *res judicata,* was considered, and it was there held that a judgment on a motion to discharge an attachment, on the ground that the property seized under such writ was exempt, was not *res judicata* in a subsequent direct proceeding in another action, brought to subject the property to the judgment rendered in the action in which such attachment writ was issued. See, also, *Leavenworth L. & G. R. Co. v. Clemmans,* 14 Kan. 91 (2d Ed. Ann. p. 77); *Bank v. Barkalow,* 53 Kan. 68, 35 Pac. 796; *Stapleton v. Orr,* 43 Kan. 170, 23 Pac. 109; 22 Cyc. 740; 16 Am. & Eng Enc. Law, 345. We, accordingly, conclude that the judgment modifying the order for a temporary injunction, as affirmed by the Supreme Court of the territory of Oklahoma, was not *res judicata,* so as to determine the rights of the parties to such action on a final trial.

2. The amended petition was substantially the same as the original petition, except the additional allegation that the plain-

tiff was the owner of certain lots in Academy addition to the city of Newkirk, and was filed before there had been any final trial on the merits in said action. After the amended petition was filed, a new temporary injunction was issued, and the plaintiffs in error, as defendants, pleaded to such amended petition. If the amendment changed substantially the claim or causes of action of the defendants in error, the court erred in permitting said amended petition to be filed. By reference to the original petition we find that it is alleged that the premises on which the slaughterhouse was located were situated immediately north of, and contiguous to, the premises owned by the plaintiff, and that the city of Newkirk was then, and had been for more than five years, a city of the first class, organized and existing under and by virtue of the laws of the territory of Oklahoma; that the land upon which the slaughterhouse was located was situated within less than a half mile from the corporate limits of said city of Newkirk, and within less than half a mile from a tract of land platted into lots and blocks as College addition to said city of Newkirk, and within less than half a mile from land platted for the purpose of being sold for residences, which land had actually been sold for such purpose.

It is true that further on in said petition it is alleged that a stream, called Spring creek, runs through and over the premises of both parties thereto; that it is down the stream from defendants' premises to the plaintiff's premises, and that on said premises owned by the plaintiff he has erected and occupies a dwelling house located about 20 rods from said creek, and near said dwelling there is a spring from which the plaintiff and his family use water for family purposes; that said spring is located near the bank of said creek, and that the defendants have erected, maintain, occupy, and operate, a slaughterhouse on said premises owned and controlled by them, and that said defendants kill and butcher, and cause to be killed and butchered, on said premises and in said slaughterhouse, beeves, hogs, sheep, and goats, and that said defendants leave and permit to remain on said premises,

and in and near said slaughterhouse, the offal, refuse, and unsalable portions of said beeves, hogs, sheep, and goats so butchered thereon; that said portions of said stock are permitted to remain on said premises near the said creek, and are permitted by said defendants to decay, decompose, and become foul; that a portion of said offal and refuse thereby becomes scattered over and upon the premises of the plaintiff, rendering unusable, unhealthful, and unwholesome the water of said spring; that the decay and decomposition of said offal and refuse on the premises of both parties thereto creates a foul, unhealthful, and annoying stench and odor at and around the said dwelling house of the plaintiff, and that the health of the plaintiff and his family is greatly endangered and life rendered unpleasant thereby. Then follows the further allegation that the defendants are engaged in the retail butcher business in the city of Newkirk, and do a large and extensive business, and that all their animals for such market are killed and slaughtered at said slaughterhouse, and that the maintenance of said slaughterhouse is specially injurious to the plaintiff, as hereinbefore set out.

Section 624 (chapter 13, art. 10, § 134), Wilson's Rev. & Ann. St. 1903, provides:

"It shall be unlawful for any person to maintain a slaughterhouse within less than one-half mile of any tract of land platted into lots and blocks as an addition to any town or city within the territory of Oklahoma, or to maintain such slaughterhouse within one-half mile of any tract of land platted into acre tracts for the purpose of being sold for residence, and in which tracts of land have actually been sold for residence purposes."

Then follows section 626, providing that the maintaining of any slaughterhouse in violation of said act is declared to be a nuisance, and any person owning real estate in any such addition to a town or city, or within the lands platted and set apart to be sold for residence purposes, may maintain an action in the courts to abate such nuisance and to enjoin the continuance thereof; and, if it appears that same has been carried on in violation of said act, a perpetual injunction shall be granted against the parties

maintaining such nuisance. The filing of amendatory and supplemental pleadings rests largely within the discretion of the trial court; and, unless there is a clear abuse of that discretion, its ruling will not be reversed. *Rogers v. Hodgson,* 46 Kan. 276, 26 Pac. 732; *Beecher v. Ireland,* 8 Kan. App. 10, 54 Pac. 9; *Mitchell v. Ripley et al.,* 5 Kan. App. 818, 49 Pac. 153; *Brokaw v. Bartley,* 9 Kan. App. 318, 61 Pac. 320; *Robbins v. Barton,* 9 Kan. App. 558, 58 Pac. 279; *Clarke v. Spencer,* 14 Kan. 398, 19 Am. Rep. 96; 1 Ency. Pl. & Pr. 527, and authorities cited in footnote 1.

In the case of *Kansas City v. Hart,* 60 Kan. 689, 57 Pac. 938, Mr. Justice Johnson, in delivering the opinion of the court, said:

"The averments of the original petition clearly indicate an attempt to state a common-law liability, and this was the view taken by the trial court, who in his instruction told the jury that the original petition upon its face merely contained allegations which constituted a cause of action at common law, and did not set up a cause of action under the statute. While holding this view, the trial court permitted oral testimony as to the intention of the plaintiff's attorney in drawing the pleading—whether he intended to state a cause of action under the common law or under the statute—and upon this testimony submitted to the jury the question whether the cause of action sued on originally was the same cause of action set out in the amended pleading. In holding this view the trial court felt bound by, and followed, the rule in *Ball v. Biggan,* 6 Kan. App. 42, 49 Pac. 678, a decision which we cannot approve. We are clearly of the opinion that the effect of a pleading is to be determined by its averments, and not by the statements of the pleader as to what he intended that it should contain. As was said in *Haley v. Hobson,* 68 Me. 167: 'The court looks to the declaration to ascertain what causes of action are provable under it, and not to the mind of the plaintiff when he commenced his action. The intention of the plaintiff at that time to recover upon an item not embraced within the purview of the declaration will not avail him; nor will his want of an intention to maintain a particular claim prevent his recovery for that, if it is recoverable under the declaration.' Looking, then, at the original petition, it plainly appears to contain

a complete cause of action, but quite unlike the one on which the recovery was had. The true criterion is, Did the plaintiff so state his cause of action originally as to show that he had a legal right to recover what he subsequently claimed? The right of action under the statute is a conditional one; and, unless the plaintiff brings himself within the prescribed conditions, the action cannot be maintained. *Hamilton v. H. & St. J. R. Co.,* 39 Kan. 56, 18 Pac. 57. The action for death is distinct and independent from an action for services under the common law, and a different measure of damages is applied. In *City of Eureka v. Merrifield,* 53 Kan. 794, 37 Pac. 113, which was an action by the next of kin to recover for a death, it was held that the petition must allege that the deceased at the time of his death was a nonresident of this state, or, if a resident of the state, that no personal representative of his estate had been appointed, and the omission of these averments was held to be a fatal defect. In that case the distinction between an action for death and the common-law action for injury is pointed out, and reasons are given why it cannot be maintained except under the statutory conditions. In the recent case of *Walker v. O'Connell,* 59 Kan. 310, 52 Pac. 894, the court, in speaking of the ruling in *City of Eureka v. Merrifield,* remarked that: "The decision of that case is well sustained by other like authorities. Its reasoning is entirely satisfactory to us, and it applies to all the various instances in which the rule was invoked in this case." These essential averments were entirely absent from the original petition, and there was nothing to indicate a claim of the particular and exceptional right given by the statute until the amendment was filed, and at that time the bar of the statute against the assertion of such a claim was complete. The amendment, as we have seen, introduced a distinct liability; and, 'while the courts are liberal in permitting parties to amend their pleadings, they are not warranted in allowing amendments which substantially change the claim or defense previously relied on.' *Jewett v. Malott,* 60 Kan. 509, 57 Pac. 100; *Walker v. O'Connell, supra.*"

In the case at bar, it is evident that in the original petition the plaintiff intended to bring himself within the provisions of sections 624 and 626, *supra,* and the fact that he may have also in the petition pleaded a distinct ground for the abatement of a nuisance at common law would not have prevented him from

prosecuting in the same petition the action under the Code to abate the nuisance. It may be said that two causes of action were attempted to be pleaded in the original petition. That matter will be considered further on. But we are of the opinion that the trial court did not abuse its discretion in permitting the amendment.

3. As to whether or not there was error in overruling the motion of the defendants to require the plaintiff to separately state and number his causes of action we will now determine. In the case of *Grimes et al. v. Cullison*, 3 Okla. 269, 41 Pac. 355, it is held that where a motion to make a petition more definite and certain is filed, and said motion fails to in any manner point out wherein said petition is indefinite and uncertain, it is not error to overrule such motion. To the same effect are the cases of *Gilmore v. Norton*, 10 Kan. 491 (New Ann. Ed. 369), and *Kerr v. Reece*, 27 Kan. 338. In the case of *Ambrose v. Parrott*, 28 Kan. 699 (New Ann. Ed. 498), the court held that a motion requiring different causes of action to be separately stated and numbered should in all cases point out specifically the matters which the parties filing same desire the court to act upon, designating the matter supposed to constitute each separate and distinct cause of action, so that the court may act intelligently, however, with the limitation that in reviewing such matters, even by the appellate court, a discretion may be exercised. In this case we are clearly of the opinion that two separate causes of action were attempted to be pleaded, and that, after the amendment was allowed by the court, it was proper to file a motion requiring that they be separated. But in this motion counsel fail to particularize and specify the ground. The defendants in their answer admit all the allegations entitling the plaintiff to the injunction abating the nuisance, after the amendment, within the purview of sections 624 and 626, *supra*.

In the case of *St. L. & S. F. R. Co. v. French*, 56 Kan. 588, 44 Pac. 12, Mr. Chief Justice Martin, in delivering the opinion of the court, said:

Vol. 23—28

"The petition was good as against a demurrer, but the charge of negligence was vague and general, and the motion to make more definite and certain ought to have been sustained. Civ. Code (Gen. St. 1889, par. 4202) § 119; *H. & St. J. R. Co. v. Fox,* 31 Kan. 586, 590, 3 Pac. 320; *Mo. Pac. Ry. Co. v. Merrill,* 40 Kan. 404, 406, 19 Pac. 793; *A., T. & S. F. R. Co. v. O'Neill,* 49 Kan. 367, 385, 30 Pac. 470. We think, however, that the error was not prejudicial to the defendant below, for the following reasons: The casualty occurred at midday, in the presence of several persons, and his fellow employes knew that French was killed by falling off the pilot and being run over by the cars, and before the trial of the case all the evidence offered on the part of the plaintiff relating to the occurrence was taken by deposition, and thus the defendant below had much better knowledge of the facts relied on by the plaintiff below than the court could have required to be set forth in any petition. *Mo. Pac. Ry. Co. v. Merrill, supra,* was an action for damages by fire. The charge of negligence was general; and the railway company asked that it be made more definite and certain by stating whether a freight or passenger train was charged with setting out the fire, and whether it was running east or west. and this court was of opinion that the motion should have been sustained; but in the opinion the court says (page 406 of 40 Kan., page 794 of 19 Pac.); 'The record discloses, however, that no prejudice resulted to the company from the ruling made. Some of the servants of the company were present when the fire escaped, and assisted in putting it out, and one of them reported to the company the cause and extent of the injury. They had the same information as to which locomotive and train were passing as Merrill had, and therefore the company suffered no inconvenience in this instance from the indefiniteness of the petition. As the court is invested with considerable discretion in passing on motions of this kind. and as no prejudice resulted to the company, the ruling of the court cannot be regarded as reversible error.' "

Whilst the defendants were entitled to have the two causes of action set out separately and numbered in the amended petition, as the same evidently were attempted to be pleaded in the original petition, but not having brought themselves clearly within the rule by particularizing and specifying the different alleged causes of action, and it appearing in their answer subsequently filed that

they admitted all the facts alleged in the cause of action under said sections 624 and 626, as would entitle the plaintiff to the injunction abating the nuisance, there was no error prejudicial to the rights of the defendants. Not feeling inclined to reverse a case on a clear technicality, when upon another trial the same conclusion, under the facts admitted in this record, would result, we accordingly decline to disturb the action of the lower court relative to said motion.

4. It is insisted that sections 624 and 626, *supra,* are repealed by implication by an act amending sections 15, 16, 19, 22, 62, 63, article 1, c. 15, St. Okla. 1893, relating to cities, towns, and villages, and for other purposes, passed and approved March 16, 1903 (Sess. Lews 1903, p. 105, c. 7). The plaintiff in error does not attempt to point out specifically wherein same are irreconcilable. Repeals by implication are not favored; and, when two statutes, covering in whole or in part the same matter, are not absolutely irreconcilable, effect should be given, if possible, to both, and a general act is not to be construed as applying to cases covered by a prior special act on the same subject. *Carpenter v. Russell,* 13 Okla. 277, 73 Pac. 930. Also, in *Huston v. Scott et al.,* 20 Okla. 142, 94 Pac. 512, the question of repeals by implication is considered fully, and the rule laid down in the case of *Carpenter v. Russell, supra,* is adhered to. Plaintiff in error neither pointing out, nor in any manner specifying, in what particular the said two acts are irreconcilable, and not perceiving that they are irreconcilable, we are constrained to hold said sections 624 and 626, *supra,* were then in force, and are now in force in this state. Schedule to Const. § 2 (Bunn's Ed. § 451).

5. The Legislature of Louisiana, on the 8th day of March, 1869, passed an act granting to a corporation, created by it, the exclusive right for 25 years to have and maintain slaughterhouses, landings for cattle, and yards for inclosing cattle intended for sale or slaughter within the parishes of Orleans, Jefferson, and St. Bernard, in that state, embracing a territory of 1,154 square miles, including the city of New Orleans and a population of be-

tween 200,000 and 300,000 people, and prohibiting all other persons from building, keeping, or having slaughterhouses, landings for cattle, and yards for cattle intended for sale or slaughter, within those limits, and requiring that all cattle or other animals intended for sale or slaughter in that district should be brought to the yards and slaughterhouses of the corporation, and authorizing the corporation to exact certain prescribed fees for the use of its wharves and for each animal landed, and certain prescribed fees for each animal slaughtered, besides the head, feet, gore, and entrails, except of swine.

It was held in the *Slaughter House Cases,* 16 Wall. 36, 21 L. Ed. 394, that said act was a valid police regulation for the health and comfort of the people, within the power of the State Legislature, unaffected by any of the provisions of the federal Constitution, Mr. Justice Miller, in delivering the opinion of the court (page 62 of 16 Wall., page 394 of 21 L. Ed.) said:

" 'Unwholesome trades, slaughterhouses, operations offensive to the senses, the deposit of powder, the application of steam power to propel cars, the building with combustible materials, and the burial of the dead, may all,' says Chancellor Kent, 'be interdicted by law, in the midst of dense masses of population, on the general and rational principle that every person ought so to use his property as not to injure his neighbors, and that private interests must be made subservient to the general interests of the community.' ' This is called the 'police power'; and it is declared by Chief Justice Shaw that it is much easier to perceive and realize the existence and sources of it than to mark its boundaries, or prescribe limits to its exercise. This power is, and must be from its very nature, incapable of any very exact definition or limitation. Upon it depends the security of social order, the life and health of the citizen, the comfort of an existence in a thickly populated community, the enjoyment of private and social life, and the beneficial use of property. 'It extends,' says another eminent judge, 'to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property, within the state; * * * and persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state. Of

the perfect right of the Legislature to do this no question ever was, or upon acknowledged general principles, ever can be, made; so far as natural persons are concerned.' The regulation of the place and manner of conducting the slaughtering of animals, and the business of butchering within a city, and the inspection of the animals to be killed for meat, and the meat afterwards, are among the most necessary and frequent exercises of this power. It is not therefore needed that we should seek for a comprehensive definition, but rather look for the proper source of its exercise."

In the case of *Stone et al. v. State of Mississippi ex rel. Attorney General,* 101 U. S. 814-821, 25 L. Ed. 1079, the court said:

"Many attempts have been made in this court and elsewhere to define the police power, but never with entire success. It is always easier to determine whether a particular case comes within the general scope of the power than to give an abstract definition of the power itself, which will be in all respects accurate. No one denies, however, that it extends to all matters affecting the public health or the public morals."

In the case of *Lawton v. Steele,* 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385, the court said:

"The extent and limits of what is known as the 'police power' have been a fruitful source of discussion in the appellate courts of nearly every state in the Union. It is universally conceded to include everything essential to the public safety, health, and morals, and to justify the destruction and abatement by summary proceedings of whatever may be regarded as a public nuisance."

The Legislature of the state of Louisiana, by act Feb. 26, 1874 (Acts 1874, p. 65, No. 31), declared that private markets should not be established, continued, or kept open within 12 squares of a public market. In the case of *City of New Orleans et al. v. Stafford,* 27 La. Ann. 419, 21 Am. Rep. 563, the court said:

"Has the Legislature the power to make the regulation which it has made by this act of February 26, 1874, declaring that private markets shall not be established, continued, or kept open within 12 squares of a public market? This question, we think, must be answered in the affirmative. And the power arises from the nature of things, and is what is termed a 'police power.' It

springs from the great principle, '*Salus populi suprema est lex.*'
There is in the defendant's case no room for any well-grounded
complaint of the violation of a vested private right; for the priv-
ilege, if he really possessed it, of keeping a private market, was
acquired subordinately to the right existing in the sovereign to
exercise the police power to regulate the peace and good order
of the city, and to provide for and maintain its cleanliness and
salubrity."

In the case of *State v. Tower,* 185 Mo. 79, 84 S. W. 11,
68 L. R. A. 402, Judge Gantt, in delivering the opinion of the
court, said:

"It is first insisted that the Legislature has invaded the ju-
dicial province in declaring the emission of dense, opaque smoke
into the open air of cities having a population of 100,000 inhabi-
tants a nuisance, for the reason that such conduct is not inher-
ently a nuisance. In a word we assume that the basis of this con-
tention is that, because at common law dense smoke was not
deemed a nuisance *per se,* but depended on the character of the
smoke, the quantity, the location, and the circumstances, there-
fore it was not competent for our General Assembly to declare the
emission or discharge into the open air of dense smoke within a
city of 100,000 inhabitants a nuisance. The power of the General
Assembly to pass all needful laws, except when restricted by the
state or federal Constitution, is plenary, and the Legislature has
the power to declare places or practices to the detriment of pub-
lic interests, or to the injury to the health, morals, or welfare of
the community, public nuisances, although not such at common
law. The General Assembly, in the exercise of the police power,
may declare that a nuisance which before was not a nuisance.
Such an act is properly within that power which is conferred by
the Constitution of this state upon the General Assembly in the
distribution of the powers of our state government. *Lawton v.
Steele,* 119 N. Y. 226, 23 N. E. 878, 7 L. R. A. 134, 16 Am. St.
Rep. 813; *Mulger v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L.
Ed. 205; *Mathews v. St. Louis & S. F. Ry. Co.,* 121 Mo. 298, 24
S. W. 591, 25 L. R. A. 161; *Moses v. United States,* 16 App. D.
C. 428, 50 L. R. A. 532. Because at common law smoke was not
a nuisance *per se* is no reason why the people of this state,
through their representatives in the legislative department, may not
change that law and make it a nuisance *per se,* when the location
and surrounding circumstances in their opinion and judgment

require it. The General Assembly may adopt new regulations from time to time, as the occasion and necessity may require. The state has no higher function than the duty to provide for the safety and comfort of its citizens. There is nothing unreasonable in this act. Even at common law smoke alone in certain circumstances constituted a nuisance; that is to say, when it produced a tangible injury to property, as by the discoloration of buildings, injury to vegetation, the discoloration of furniture, and like cases. 1 Wood on Nuisances, § 505, and cases cited; *Whalen v. Keith*, 35 Mo. 87; *Cartwright v. Gray*, 12 Grant Ch. 400. It was entirely competent for the Legislature to take cognizance of the fact, known to all men, that the emission and discharge of dense smoke into the atmosphere of a large and populous city is of itself a nuisance, a constant annoyance to the general public of such city, and one calculated to interfere with the health and comfort of the inhabitants thereof, and to declare it a nuisance *per se.*"

A city of the first class, under the laws of the territory of Oklahoma (section 346, Wilson's Rev. & Ann. St. 1903), was required to have a population of at least 2,500 people. See, also, section 3 (a), art. 18, Bunn's Ed. § 413, Const. Okla. If, as was determined by the Supreme Court of the United States, it was a reasonable exercise of the police power by the Legislature to provide that the slaughtering of animals for food should be confined to one building within the limits of 1,154 square miles, and by the Supreme Court of the state of Louisiana that it was reasonable for the Legislature to prohibit private markets within 12 squares of a public market in a city of that state, it was certainly not an abuse of the exercise of the police power in the territory of Oklahoma to prohibit the maintenance of a slaughterhouse within one-half mile of the corporate limits of a city of the first class. Section 624, *supra*, excludes slaughterhouses or pens from being maintained within a certain area, and when located within such prohibited territory are nuisances *per se*. When maintained without the prohibited area, the common-law remedy only applies. It is a matter of common knowledge that slaughterhouses and pens are, as a rule, offensive and perilous to health, emitting unpleasant and dangerous odors and stench. Besides, the cattle,

sheep, and goats that are necessarily kept there at intervals for slaughter low and bleat, and annoy and disturb the inhabitants of the adjacent city. Whilst property rights should be carefully guarded, yet at the same time the right and duty of the commonwealth to protect the health and comfort of people living in cities is paramount. Courts should scrutinize carefully to see that investments and accumulations are not ruthlessly and recklessly interfered with, but in this case it does not appear that the act of the legislature was an unreasonable exercise of the police power.

No reversible error appearing in the record, the judgment of the lower court is affirmed.

All the Justices concur.