THE ATCHISON, TOPEKA & SANTA FE RAILROAD
COMPANY v. M. H. OSBORN.

**No. 10323.**

1. WITNESS TO QUANTITY OR VALUE—*cannot give another's estimate or conclusion.* In showing the quantity and value of wheat alleged to have been destroyed by fire, a witness should be confined to his individual knowledge and judgment, and not be permitted to give the estimate or conclusion of another, who also made an examination as to quantity and value.

2. DAMAGE BY FIRE—*action for, caused by particular engine and engineer, evidence not admissible as to another engine or engineer.* When it is claimed that a certain engine, in charge of a particular engineer, was defective, and was so negligently managed as to unnecessarily throw out fire, from which damage resulted, testimony of the condition of another engine or of the careless conduct of other engineers is ordinarily not admissible.

3. —— *declarations of section foreman and depot agent, made after fire and explaining its cause, mere hearsay as to company.* The declarations of the section foreman and the depot agent of the railroad company, made after the fire occurred, in regard to the condition and management of the engine, and which had no connection with the business committed to them, are mere hearsay.

Error from Harper District Court. Hon. G. W. McKay, Judge. Opinion filed December 11, 1897. *Reversed.*

*A. A. Hurd* and *Stambaugh & Hurd,* for plaintiff in error.

*Sankey & Campbell,* for defendant in error.

JOHNSTON, J. M. H. Osborn brought this action against the Atchison, Topeka & Santa Fe Railroad Company to recover damages for the destruction of several stacks of wheat by a fire alleged to have been negligently started by one of the Company's locomotives. The wheat was stacked on Osborn's premises, which adjoined the right of way and depot grounds of the Railroad Company, at Danville ; and it appears

that the fire started immediately after a passenger train of the Company had passed over the road and departed from that station. The acts of negligence charged were : *First*, careless management of the engine ; *second*, defective engine, and negligently failing to employ suitable means to prevent the escape of fire therefrom ; and, *third*, negligently allowing dead grass and other combustible matter to remain on the right of way. The ground relied upon at the trial, and the only negligence found by the jury, was " carelessness in handling the engine."

It appears that the stubble remaining after the wheat was cut was about fifteen inches high, and there had grown up in it a tickle grass, which had ripened and was very dry and combustible when the fire occurred. The agent of the Company had requested the plaintiff to plow fire-guards for the protection of his wheat ; and after the agent had promised to pay him at the rate of three dollars per day for plowing fire-guards, he plowed two sets of furrows near the right of way, after which, the employees of the Company burned out the stubble and grass between the furrows, thus making a fire-guard about one hundred feet wide. Although Osborn was plowing on either side of the stacks near the time of the fire, no guards were plowed immediately around the stacks, nor was any plowing done across the end of the unplowed ground which extended to the right of way, other than the fire-guard already mentioned.

There was testimony tending to show that an inspection was made, shortly before and shortly after the fire, from which it appeared that the engine was in good condition, and also that it was supplied with modern improvements calculated to prevent the escape of fire.

Soon after the fire, Osborn procured nine of his

49—58 KAN.

neighbors, who met and measured the ground from which the wheat was taken that was destroyed, and estimated the number of bushels that were in the stacks, the value of the wheat, and the value of the straw ; and their conclusions were reduced to writing, and signed by all the parties participating.  At the trial of the case, several of these persons were called as witnesses, and were permitted to testify as to the written memorandum of the estimate which all had united in making.  Some of the witnesses had personal knowledge of the extent of the ground from which the burnt wheat was taken, and had also seen the wheat growing and knew something of its character and quality.  Some of them had assisted in harvesting it, and were therefore well qualified to judge of the acreage, as well as the quantity and quality, of the wheat destroyed.  While the witnesses were not warranted in giving the conclusions reached by others,

1. Witness cannot give another's estimate of quantity.

it was competent for them to refer to the written memorandum, made at the time the ground was measured, to refresh their recollection.  Having referred to it for that purpose, they could only testify as to their own knowledge and their own judgment, so far as the same was competent. Some of them, who had little knowledge as to the quality or value of the wheat, or of anything except the extent of the land from which it was cut, apparently based their judgment upon the conclusions of others.  To that extent their testimony was incompetent.  There was a great deal of testimony as to the quality and quantity of wheat, and not much dispute upon that question, and therefore it is contended that the error, if any, is not sufficiently material to require a reversal.  In view of the other questions which arise in the case, it is not necessary to determine whether this incompetent testimony is prejudicially erroneous.

One of the witnesses was permitted to state that the engines of the Company had frequently started fires at Danville, and that the day before the occurrence of this fire one had been started near the station. It did not appear that the fire mentioned by the witness was from the same engine which it is claimed started the fire in question, nor that the engine was operated by the same engineer. The condition of other engines, or the methods of other engineers on other occasions, had little, if any, bearing, and would not aid the jury in determining the issues presented in this case. The fact, if it be one, that other engineers had been careless, does not prove negligence on the part of the one in charge of the engine which passed near the time of the fire; and as carelessness in the management of the engine was the ground of recovery, such testimony may have been prejudicial.

*2. Evidence not admissible as to another engine.*

Other testimony, relating to the management of the engine, of an erroneous and very prejudicial character, was admitted. The plaintiff below was permitted to give the declarations of the section foreman and of the local agent with respect to the throwing of fire from the engine. He testified that they told him that, on the day the fire burned the wheat, "the engine was throwing fire all along the road," and they had "just come from a fire up east." Another witness was permitted to give the subsequent declarations of the agent to the effect that the cause of the fire was the poor coal that was being used in the engine. These declarations related to the management of the engine from which it is said the fire was thrown, and on the day the fire occurred. It is claimed that the engineer was applying steam unnecessarily, and so handling his engine when he was opposite the land on which the stacks

*3. Declarations of foreman and agent hearsay, when.*

stood as to throw out fire. Testimony that he was so managing it that it was throwing out fire along the road before reaching and after leaving Danville on that day, would have an important bearing on the case and would naturally influence the jury. Neither the section foreman nor the depot agent had anything to do with the care or management of the engine ; and the fact that they were in other branches of the Company's service did not render competent any subsequent statements or admissions made by them as to the cause of the fire or the carelessness of the engineer. The declarations did not relate to matters within the scope of their agency or authority, and, having no connection with the business committed to them, can have no binding effect upon the Company. They were made after the fire occurred ; and are in no sense a part of the *res gestæ*, but are mere hearsay testimony, and should have been excluded. *U. P. Rly. Co. v. Fray*, 35 Kan. 700 ; *Tennis v. Rapid Transit Rly. Co.*, 45 id. 503 ; *A. T. & S. F. Rld. Co. v. Wilkinson*, 55 id. 83.

The testimony of David Morgan, as to the condition of the engine and whether it had the latest improvements to prevent the escape of sparks and fire, was rejected. It was stricken out upon the ground that the witness had not shown himself to be competent to testify upon the subject. In this we think there was error. He was familiar with locomotives, had been a boilermaker for about fifteen years, and had acted as boilermaker and inspector for the plaintiff in error between four and five years, during which time his duties were to examine nettings, ash-pans, stacks and dampers, and to inspect the engines which came in and went out, as to their condition. There was no contrary testimony as to his qualifications, and, in view of that which has been related, we think he was

competent to give an opinion as to the condition of the engine and the appliances with which it was supplied to prevent the escape of fire.

Some other objections are raised which we do not deem it necessary to notice; but, for the errors mentioned, the judgment will be reversed, and the cause remanded for another trial.