THE J. I. CASE PLOW WORKS v. PARK B. PULSIFER,
as Trustee, etc.

No. 15,728.   (98 Pac. 787.)

SYLLABUS BY THE COURT.

1. EVIDENCE—*Corporations*—*Declarations of Agent.* The decla-
rations and admissions made by an agent of a corporation are
competent evidence against the corporation, first, when they
relate to matters under the charge of such agent and in re-
spect to which he is authorized in the usual course of busi-
ness to give information, and, second, when they are made
while the agent is acting within the scope of his authority,
and during the continuance of his agency, in regard to trans-
actions depending at the time they are made.

2. —— *Hearsay.* The declarations of an agent which are not
within the first classification, and which relate only to a past
transaction, are hearsay and inadmissible.

Error from Cloud district court; WILLIAM T. DIL-
LON, judge. Opinion filed December 12, 1908. Re-
versed.

STATEMENT.

THIS is an action of replevin, brought by the J. I.
Case Plow Works to recover the possession of certain
buggies, wagons and farm machinery. The property
had been shipped to John O. Strain in two shipments,
one under date of October 16, 1906, the other under
date of November 28, 1906. The jury returned a ver-
dict in favor of the plaintiff for the property shipped
October 16, and in favor of the defendant for the prop-
erty shipped November 28. The plaintiff alleges error
and brings the case here.

The plaintiff is a corporation engaged in the business
of selling wagons, buggies and agricultural implements
at wholesale, with its home office at Racine, Wis., and
principal western office at Kansas City, Mo. For some
time prior to December 7, 1906, Strain was a retail
dealer at Jamestown, Kan. On August 23, 1906, he
entered into a written contract with the plaintiff for
the purchase of agricultural implements. On October

13 he ordered four buggies. These constituted the ship-
ment for which the jury found in favor of the plaintiff.
On October 31 he sent in another order, and the goods
then ordered, together with some others previously or-
dered, were shipped November 28, and were the prop-
erty for which the jury found in favor of the defendant.

The plaintiff claimed that the property was sold
upon credit, based upon representations made by Strain
to the R. G. Dun Mercantile Agency, August 24, 1905,
that he was worth more than $24,000, over and above
his debts, exemptions and liabilities, and also based
upon representations made October 31, 1906, by Strain
to the plaintiff company, through its traveling sales-
man, Keener, that he was worth more than · $18,000,
over and above his debts, exemptions and liabilities.

On December 7, 1906, being insolvent, Strain made
a trust deed of all of his property for the benefit of his
creditors to Park B. Pulsifer, the defendant in this
case. On December 12 the plaintiff brought this action.

Keener, the traveling salesman for the plaintiff com-
pany for a number of years in the territory including·
Jamestown, who had obtained the financial statement
from Strain October 31, 1906, was in Jamestown on the
day that the trust deed was made, under orders from
the claim department of the plaintiff company at Racine
to collect a check from Strain for $240, which had been
protested for non-payment. He was in the habit of
making collections for the company when directed to
do so in his territory. Just prior to this he had been
in Jewell City for the plaintiff to adjust a claim that
it had against a failing concern there. While on his
way to Jamestown from Jewell City he met Mr.
Swayze, a traveling representative of the Parlin &
Orendorff Plow Company, who was also on his way to
Jamestown to protect the interests of his company with
Strain. Mr. Swayze testified in regard to a conversa-
tion with Mr. Keener on that occasion, as follows:

"Ans. I can not state just his exact words, as I can

12—79 KAN.

not remember just what led up to the conversation. I was on my way to Jamestown for the purpose of looking into this matter, and knowing the condition of Mr. Strain I called Mr. Keener's attention to the fact, or possibly he did mine, but at any rate he told me that they had shipped him a car of goods just a few days before, and I asked him if it was on a contract. He said he was not sure about that. I told him if it was on a contract he could protect himself and get possession of the goods, but if they came into possession of Mr. Strain it looked like he was up against it. As near as I can remember the question of credit came up, and he said that so long as Parlin & Orendorff and other people were selling him goods that his credit was all right, and that they were willing to take their chances along with the other people. He further said that so far as they were concerned their goods were held under the same kind of a contract that ours were held, and which we call a No. 2 contract, or commission contract."

"Q. In that conversation did you discuss with him the fact that for weeks and months Mr. Strain had been in a failing condition? A. Yes, sir; the subject was discussed.

"Q. What did he say in regard to his idea of Mr. Strain's condition for a few months before the failure? A. I can not exactly give his language.

"Q. State the substance. A. Only that he was known to be for some time in a bad condition."

This testimony was admitted over the objections of the plaintiff, and its admission is alleged as error.

*Chiles C. Coleman,* and *Frank L. Williams,* for plaintiff in error.

*Park B. Pulsifer,* and *Charles L. Hunt,* for defendant in error.

The opinion of the court was delivered by

BENSON, J.: The declarations and admissions made by an agent of a corporation are competent against the corporation in two classes of cases:

First, when they relate to matters under the charge of such agent in respect to which he is authorized in

the usual course of business to give information. (Ab-
bott's Trial Ev., 2d ed., 54; *McGenness v. Adriatic
Mills*, 116 Mass. 177.) As corporations can only act
through their agents the declaration of an officer or
agent whose duties authorize him thus to speak for the
principal are treated as the statements of the princi-
pal. (2 Whart. Law of Ev. § 1177.)

Second, such declarations are admissible when made
by the agent "while acting within the scope of his au-
thority, and during the continuance of his agency, in
regard to transactions depending at the time they are
made." (1 Ell. Ev, § 252.)

(See, also, 2 Wig. Ev. § 1078.)

The declarations of an agent which are not within
the first classification, and which relate only to a past
transaction, are hearsay and inadmissible. (*Dodge v.
Childs*, 38 Kan. 526, 16 Pac. 815; *Robins v. Murdock*,
69 Kan. 596, 77 Pac. 596; *A. T. & S. F. Rld. Co. v.
Wilkinson*, 55 Kan. 83, 39 Pac. 1043; *Railroad Co. v.
Osborn*, 58 Kan. 768, 51 Pac. 286.)

"It is elementary law that to bind his principal the
declarations of an agent must be contemporaneous with
the event in question, must be made in the transaction
of the business committed to his charge and as a part
of it, and must be calculated to unfold its nature and
to illustrate and explain its character so that acts and
declarations combine and harmonize to form one trans-
action." (*Railway Co. v. Burks*, 78 Kan. 515, 524, 96
Pac. 950.)

The general duties of the agent, Keener, were that of
a traveling salesman. Incidentally he made collections
within his territory when directed by his company to do
so; and it appears that he had by direction of the Kan-
sas City manager obtained a property statement from
Mr. Strain, after one of the orders had been received,
and forwarded it to the Kansas City office, when the
manager, whose duty it was to pass upon credits, acted
upon it and accepted the order. It also appears that
he had for several years sold goods for the plaintiff

company to Mr. Strain, and had obtained one of the orders filled in the shipment of November 28. When the conversation with Swayze took place Mr. Keener was traveling from Jewell City, where he had been making a collection for the company, to Jamestown for the purpose of collecting a protested check given by Mr. Strain and forwarded to Mr. Keener for that purpose from the plaintiff's office at Racine. He had previously obtained the property statement to enable the manager to act upon the order. That transaction had been fully closed and was no longer pending when this conversation took place. It is true that he was on his way to see Strain about a protested check. It is also true that when he reached Jamestown he undertook to adjust the matter out of which this action arose. He was engaged in business for the company, but he was not engaged in the particular business referred to in the conversation with Swayze, and as to that his statements were a narrative of a past transaction or of knowledge gained in a past transaction.

"It must be remembered," says Greenleaf, "that the admission of the agent can not always be assimilated to the admission of the principal. The party's own admission, whenever made, may be given in evidence against him; but the admission or declaration of his agent binds him only when it is made during the continuance of the agency in regard to a transaction then depending *et dum fervet opus*." (1 Greenl. Ev., 15th ed., § 113. See, also, Mechem, Agency, § 714.) It can not be claimed that Mr. Keener's duties were such that his statements should be considered as those of the principal, as might be in the case of a superintendent with reference to matters within his department, for his general duties were those of salesman. The extension of credit within his territory was a duty resting upon the manager at Kansas City, and certainly Mr. Keener was not authorized to make any statements concerning that matter relating to transactions then

closed. It is equally clear that while making such statements he was not acting within the scope of his authority with regard to matters then pending.

"An act done by an agent can not be varied, qualified, or explained, either by his declarations, which amount to no more than a mere narrative of a past occurrence, or by an isolated conversation held, or an isolated act done, at a later period." (*Vicksburg & Meriden Railr'd v. O'Brien*, 119 U. S. 99, 105, 7 Sup. Ct. 118, 30 L. Ed. 299.)

It is argued by the defendant that Keener obtained knowledge of Mr. Strain's condition at the time he took the property statement, and that the knowledge so obtained was the knowledge of the principal. If this should be conceded, still it does not follow that his statements made afterward would be competent evidence. There was no evidence that Mr. Keener had obtained such knowledge as claimed, except the admissions so testified to. In Elliott on Evidence it is said:·

"There are also many authorities which hold that the admissions of a general agent may be received as against the principal even though they relate to a past transaction, but most of the decisions to this effect are based upon facts showing that such admissions are really part of the *res gestæ*, or upon the theory that the agent, by his employment or contract, was either expressly or impliedly given authority to make such admissions, and there are an almost equal number of decisions to the effect that the declarations of a general agent made after a transaction is entirely ended are not ordinarily admissible against the principal." (1 Ell. Ev. § 252.)

It will be seen by reference to the authorities cited, and many others to the same import, that the conversation of Mr. Keener with Swayze was erroneously admitted.

The plaintiff also complains of the ruling of the court in admitting testimony concerning the following transaction: After the trust deed was made, and on the same day, Mr. Keener, the agent, induced Mr. Strain to

sign a consignment contract purporting to show that the goods in question were held for sale on commission as the property of the plaintiff, which was not true. The paper so obtained was never sent to the plaintiff, and never came to its knowledge until after the action was brought, and the plaintiff never claimed and does not claim any rights under it. It can not be treated as the act of the plaintiff, for it did not authorize it, know of its existence, or ratify it. It was the unauthorized act of the agent, and the court rightly held that it did not estop the plaintiff from maintaining the action upon the theory upon which it was brought, namely, that the goods were obtained fraudulently. The contention of the defendant is that this act of the agent was inconsistent with the claim of a right to rescind the sale for fraud, and evinced a purpose to claim the goods upon a different ground. The court instructed the jury that this attempt of the agent to substitute another contract did not amount in law to a recognition of the original sale as valid, and did not estop the plaintiff from prosecuting its action, but that the jury might consider the evidence concerning it, with the other circumstances proved, for the purpose of determining whether the plaintiff did, after obtaining knowledge of the financial condition of Strain, take any action or do anything which recognized the validity of the sale. Thus the court authorized the jury to consider this action of the agent in endeavoring to substitute another contract as some evidence of a recognition of the validity of the original sale. This would have been proper if any evidence had been given tending to show that the plaintiff had in any manner authorized or ratified the transaction. In the absence of any evidence of such authorization or ratification the instruction was erroneous, and an instruction requested by the plaintiff that the taking of such instrument by the agent should not be considered by the jury was proper. The evidence of this attempt to change the contract was ob-

Railway Co. v. Baker.

jected to when offered, but the court could not at that time determiné whether evidence would be offered tending to connect the plaintiff with it.   When the evidence closed, and it appeared that this authority was lacking, the instruction requested or one of similar import should have been given.

 Because of the errors herein referred to the judgment is reversed, and the case remanded for further proceedings.