No. 25,152.

Elsie DeBus, *Appellee*, v. Missouri State Life Insurance Company, *Appellant*.

No. 25,153.

M. L. Christman, as Administrator of the Estate of William H. DeBus, Deceased, *Appellee*, v. Missouri State Life Insurance Company, *Appellant*.

SYLLABUS BY THE COURT.

1. Life Insurance—*Denial of Liability—Waiver of Proof of Death.* ·In an action on a life insurance policy where the company denies liability on account of nonpayment of premiums, it is not prejudicial error to admit evidence to show waiver of proof of death by denial of liability, although proof of death is alleged and waiver of proof of death is not alleged.

2. Same—*Two Policies—Holder of Policies Employed as Soliciting Agent of Company—Action on Policies—Statements of Company's General Agent Competent Against Company.* A life insurance company issued two policies of life insurance to a person who was afterward employed by the company to solicit life insurance under a contract signed by the general state agent of the company and by one of its executive officers and by the person insured. Under the contract, the general agent and the person insured together solicited other persons for life insurance; and, while doing so, the general agent stated that the person insured was assisting in procuring life insurance and that his commissions were being applied to the payment of the premiums on his life insurance. *Held,* that in an action against the company on the policies, the statements of the general agent were admissible in evidence against the company.

3. Same—*Conversation Between Claimants and General Agent Competent Evidence.* Evidence of a conversation between claimants under life insurance policies and the general agent of the life insurance company is competent where the conversation took place in an effort by a representative of the beneficiaries under the policies to secure their payment.

4. Same — *Immaterial and Irrelevant Evidence — Not Reversible Error.* A judgment will not be reversed because of the erroneous admission of immaterial and irrelevant evidence where no favor or prejudice has resulted to either party from its admission.

5. Same—*Evidence of Payment of Premiums.* There was evidence which tended to prove that the second premiums on life insurance policies held by the insured had been paid.

6. Same — *Appointment and Authority of Claimant as Soliciting Agent of Company—Agreement With General Agent as to Payment of Premiums.* Where the law of a state makes it the duty of a life insurance company to notify the insurance department concerning the appointment of an agent to solicit life insurance and secure for him a license or certificate of au-

thority to solicit life insurance, the company cannot escape the payment of policies issued to the agent, where, under a contract with the agent, the company through its general agent applies the commissions earned by the agent to the payment of the premiums on the policies held by him and the commissions are sufficient to pay the premiums.

7. SAME—*Performance of Contract.* The evidence tended to show that the agent complied with the contract authorizing him to solicit insurance for the company.

8. SAME—*No Reversible Error in Instructions.* There was no reversible error in refusing the instructions requested by the defendant.

9. SAME—*Construction of Written Contract.* Where necessary for the information of the jury, the court should construe a contract admitted in evidence; but, where the court by its instructions submits to the jury the construction of such contract and the jury finds as the court should have instructed, no prejudicial error has been committed.

10. SAME — *Soliciting Agent's Commissions — Applied as Per Contract With General State Agent Binding Upon Company.* Where a life insurance agent's commissions under a contract with the general state agent of the company are applied to the payment of premiums on life insurance policies held in the company by the agent, the obligation to pay the commissions is the obligation of the company.

11. SAME—*No Error in Denying Motion to Set Aside Verdict.* There was no error in overruling the motions to set aside the general verdict and special findings of the jury.

Appeal from Sedgwick district court, division No. 3; JESSE D. WALL, judge. Opinion filed April 5, 1924. Affirmed.

*R. R. Vermillion, Earle W. Evans, Joseph G. Carey,* and *W. F. Lilleston,* all of Wichita, for the appellant.

*S. B. Amidon, S. A. Buckland, H. W. Hart,* and *Glenn Porter,* all of Wichita, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: In case No. 25,152, the plaintiff sued to recover on a policy of life insurance dated October 5, 1917, issued to William H. DeBus, her husband, in which policy she was named as beneficiary. In case No. 25,153, the plaintiff sued to recover on a policy of life insurance, dated February 11, 1918, issued by the defendant to William H. DeBus, in which policy the estate of William H. DeBus was named as beneficiary. DeBus died July 20, 1920. The defense in each case was that the policy had lapsed for nonpayment of the second and third premiums. Judgment in each action was rendered in favor of the plaintiff, and the defendant appeals.

DeBus v. Life Insurance Co.

Special questions were answered by the jury as follows:

"1. Were the applications for the policies sued on in these actions made by Wm. H. Debus in the state of Colorado? A. Yes.

"2. Were the policies sued on in these actions delivered to the said Wm. H. Debus in the state of Colorado? A. Yes.

"3. Did Wm. H. Debus execute and deliver in the state of Colorado to Doyle & Raley, general agents, a promissory note in the sum of $150.30 for each of the first year's premiums on each of the policies sued on in these actions? A. No.

"4. If you answer the last question in the affirmative then state whether or not the said Debus paid one of said notes in cash and the other by being credited with commissions he had earned.

"5. Do you find that the defendant, The Missouri State Life Insurance Company, at the time of the death of Wm. H. Debus held a note executed by him to said company dated May 8, 1919, and payable three months after date for the sum of $124.55? A. Yes.

"6. If you answer the last question in the affirmative, then state for what said note was given. A. Insurance.

"7. Do you find the defendant, The Missouri State Life Insurance Company at the time of the death of said Wm. H. DeBus held a note executed by him to said company dated May 11, 1919, for the sum of $101.79? A. Yes.

"8. If you answer the last question in the affirmative then state for what said note was given. A. Insurance.

"9. Had the second annual premium on the policy sued on in the case of M. L. Christman, administrator of the estate of Wm. H. DeBus, deceased, against the defendant herein, been paid at the time of the death of the said Wm. H. DeBus? A. Yes.

"10. If you answer the last question in the affirmative, then state to whom said premium was paid. A. Doyle & Raley.

"11. Had the second annual premium on the policy sued on in the case of Elsie I. DeBus versus the defendant company been paid at the time of the death of the said William H. DeBus? A. Yes.

"12. If you answer Question No. 11 in the affirmative, then state when said premium was paid. A. Dec. 6, 1919.

"13. If you answer the question (No. 11) in the affirmative, then state to whom said premium was paid. A. Doyle & Raley.

"14. What amount of premiums, if any, did the said Wm. H. DeBus earn by soliciting or assisting in soliciting applications for policies between the first day of December, 1918, and the first day of March, 1919? A. $450.68.

"15. Do you find that Doyle & Raley, when the policies issued on applications taken by M. J. Doyle and Wm. H. DeBus were delivered, advanced to the Missouri State Life Insurance Company its share of the first premiums on said policies? A. Yes.

"16. Did the said Wm. H. DeBus during the time he was acting as agent for the defendant insurance company have any other license or permission to so act from the insurance department of the state of Colorado except the license introduced in evidence dated December 2, 1918? A. No.

"17. State whether or not after the execution of the written contract between Doyle & Raley and the said Wm. H. DeBus the said DeBus, when policies were issued on applications which he procured, or assisted in procuring, paid to the said General Agents or the company the premiums on such policies immediately after they were delivered. A. No.

"18. Do you find that after the execution of the written contract between him and Doyle & Raley, any notes were taken for the first premiums on policies issued in pursuance of applications taken by said DeBus, or in which he assisted in taking? A. No.

"19. If you answer the last question in the affirmative, then state whether or not the said DeBus paid in cash when said notes were discounted, or when they matured, the amount due the said Doyle & Raley, or the insurance company, before the expiration of 31 days from the day of issuance of the policies for which said notes were given.

"20. Do you find that when the note given for first premium on policy sued on in the case of M. L. Christman, administrator, against the defendant company was surrendered it was agreed between Doyle & Raley and the said DeBus that the surrender of said note and check of $8.13 balanced the account between Doyle & Raley and DeBus for commissions earned by DeBus and advances made by Doyle & Raley to the company as its share of the net premiums on notes taken for first premiums? A. No.

"21. Do you find that after the execution of the written contract introduced in evidence between Doyle & Raley and the said DeBus it was agreed that on policies issued in pursuance of applications obtained by Doyle & Raley or Doyle & Raley with the assistance of DeBus, commissions provided for in said written policies should be divided equally between them? A. No.

"22. Did DeBus ever obtain any application for insurance policies for the defendant company on his own account without the assistance of M. J. Doyle? A. No.

"23. If. you answer the last question in the affirmative, then state from whom said applications were obtained.

"24. Did the said William H. DeBus obtain any applications for insurance policies or assist in obtaining any applications for insurance policies after the 11th day of May, 1919? A. No."

1. The first proposition argued is that "the court erred in admitting testimony of waiver of proof of death." Proof of death had been pleaded in both cases; waiver of proof of death had not been pleaded in either. The defendant cites several cases to show that a waiver cannot be proved unless it is pleaded. William H. DeBus was dead. The defendant, the insurer, knew that fact and in the correspondence with the beneficiaries under the policies before the commencement of these actions and in the pleadings filed therein, denied liability under the policies on the alleged ground that they had lapsed and were not in force on account of nonpayment of premiums. The denial of liability constituted waiver of proof of

death. (25 Cyc. 886; 14 R. C. L. 1349; *Protective Union v. Whitt,* 36 Kan. 760, 14 Pac. 275.) Section 60-753 of the Revised Statutes reads:

"No variance between the allegations, in a pleading, and the proof is to be deemed material, unless it have actually misled the adverse party, to his prejudice, in maintaining his action or defense upon the merits. Whenever it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court, and it must also be shown in what respect he has been misled, and thereupon the court may order the pleading to be amended, upon such terms as may be just."

Wherein the defendant was misled by permitting evidence to show a waiver of proof of death is not apparent. The defendant was not misled by that evidence. Even if error were committed in admitting the evidence, the error was not prejudicial.

2. The second proposition argued is that "the court erred in admitting evidence as to the declarations of M. L. Doyle concerning the manner in which DeBus paid the premiums on his policies." Doyle and his partner Raley were general state agents of the defendant in Colorado. They had entered into a written contract with William H. DeBus appointing him special agent of the company to procure applications for insurance on the lives of persons residing in Holly, Colo., and vicinity. The assistant secretary of the company had signed and approved that contract. The plaintiffs were contending and attempting to prove that under an agreement with Doyle, the premiums on the policies held by DeBus were to be paid out of the commissions earned by him under his contract. DeBus was assisting Doyle in procuring insurance in the vicinity of Holly. The evidence complained of was that which tended to show that Doyle, while he and DeBus were soliciting insurance, stated to those from whom insurance was being requested that DeBus was paying his premiums by assisting Doyle in procuring life insurance from other persons. The statements were made after the policies in controversy had been issued, but while Doyle and DeBus were working under the written contract between them.

It is argued that the statements were incompetent because Doyle had no authority to make them. The defendant cites *Case v. Pulsifer,* 79 Kan. 176, 98 Pac. 787, where this court said:

"The declarations and admissions made by an agent of a corporation are competent evidence against the corporation, first, when they relate to matters under the charge of such agent and in respect to which he is authorized in the usual course of business to give information, and, second, when they are

made while the agent is acting within the scope of his authority, and during the continuance of his agency, in regard to transactions depending at the time they are made.

"The declarations of an agent which are not within the first classification, and which relate only to a past transaction, are hearsay and inadmissible." (Syl.)

The statements made by Doyle concerned a transaction between him and DeBus that was then in progress—the assistance that DeBus was giving to Doyle in soliciting life insurance. The statements did not concern a past transaction. They concerned what Doyle and DeBus were then doing, and were made in the progress of that work. The written contract between the general agents of the company and DeBus had been made some time previously. It provided for the payment of compensation to DeBus for his services, although it did not provide that the compensation to be paid should be applied on the premiums on the policies held by him. That was otherwise provided for by Doyle and DeBus. *Case v. Pulsifer,* supra, does not support the contention of the defendant; it supports the contention of the plaintiffs.

3. The defendant contends that the court erred "in admitting evidence for the purpose of contradicting the testimony given by Doyle while testifying as a witness for plaintiff." Other than what has just been discussed, this complaint must refer to the testimony given by Christman as follows:

"I am the administrator of the estate of Bill DeBus. We called him William DeBus. I know this witness who was just on the witness stand. I saw him soon after my appointment as administrator. I had a conversation with him about how the premium for this first policy—the first premium was paid.

"Q. What did he tell you? . . . The Witness: He said Bill DeBus paid this in cash. He said he was in the store across the street and he happened over there at that store. He paid it, he said, in cash. At the time that they were talking of taking out this policy at the time he took the policy he paid it in cash. . . .

"Witness: This conversation I had with Doyle was in the fall of 1920.

"Q. In this conversation you had with him about the premium being due, what premium did he claim—did he say had not been paid? A. He said the third premium was not paid.

"Q. What about the other two premiums? A. He said those were paid.

"Q. That is what he had reference to in your other statement? A. Yes, sir.

"Q. Was that also true about the policy—the second policy, the one dated February, 1918. The second premium was due February, 1919, and the third premium due February, 1920. A. The third premium was not paid.

"Q. What about the second premium? A. Well, that was in dispute in regard to those premiums."

This conversation occurred during efforts to settle the claims under the policies, not to compromise the claims, but to secure their payment. Under *Case v. Pulsifer,* supra, the evidence was competent.

4. Another proposition argued by the defendant is that "the court erred in admitting in evidence, over the objection of the defendant, communications addressed by Doyle & Raley to other parties than DeBus, and certain notes sent out to be executed for premiums, which were either blank and unsigned or contained errors and therefore returned marked 'void.'" The evidence here complained of was that which tended to prove that, concerning policies held by persons other than DeBus, letters had been written, literature sent out, and notes had been taken or proposed for postponed payments of premiums on such policies. This evidence may have been inadmissible; it concerned transactions not in controversy in these actions. Wherein the evidence was relevant, the court does not see, but it in no way prejudiced or favored either of the parties in either of these actions. The error, if any there was, in admitting that evidence was immaterial and therefore not prejudicial.

5. The defendant filed a demurrer to the evidence of the plaintiff in each of these actions. Those demurrers were overruled. Complaint is made of those rulings. One proposition argued to show that there was error in overruling those demurrers is that under the law of the state of Colorado, it was not necessary to give notice to life insurance policy holders before the policies could be declared forfeited or lapsed for nonpayment of premiums. Each of the policies involved provided that it lapsed or would be forfeited upon nonpayment of the second year's premium within thirty-one days after the same became due, without any affirmative action on the part of the defendant company. For the purpose of argument, that may be admitted as true, but the contentions of the plaintiffs were that the second year's premiums had been paid. If those premiums had been paid, there is no merit to the contention of the defendant. The jury found that they had been paid, and there was evidence on which the jury could base that finding.

6. Another proposition advanced to show that the court committed error in overruling the demurrers is that under the law of the state of Colorado, it was necessary for DeBus to have a license or certificate from the insurance department of that state showing he was authorized to solicit applications for life insurance. The

evidence tended to show that such a certificate was issued, and delivered to him, but that the services out of which it is claimed he paid the second year's premiums were rendered after his certificate or license had expired. On this subject, the law of the state of Colorado read:

"Every such company shall, through its proper officer or agent, promptly notify the commissioner in writing of the name, title and address of each person it appoints or employs to act as agent or solicitor in this state. Upon receipt of this notice together with the fee required by this act, if such person is of good reputation and character and the facts warrant it, the commissioner shall issue to such a person a certificate, which shall include the name of the company requesting it, a copy of the certificate of authority authorizing it to do business in this state, and the name and title of the person to whom the certificate is issued. Certificates issued under this section shall be considered the licenses of the company, corporation, association or society applying for the same and may at all times be transferred from the agent to whom the certificate was originally issued to another agent, on the approval of the commissioner, who shall make the proper endorsement on such certificate. Such certificate, unless revoked by the commissioner for cause, or cancelled at the request of the company employing the holder thereof, shall continue in force until the first day of March next after its issue, and must be renewed annually. . . .

"It shall be the duty of every person soliciting insurance in this state to comply with the provisions of this act relating to the procurement of certificate or licenses; and any person who solicits insurance without the certificate of authority of an agent, solicitor or broker for the company receiving the business, as required by this act, shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than one hundred dollars ($100) or by imprisonment in the county jail of not exceeding two months (2), or both such fine and imprisonment, in the discretion of the court."

It should be noticed that the law required the defendant to notify the insurance commissioner of Colorado of the name, title and address of any person employed to solicit insurance in that state. The duty was on the company to procure the certificate or license for DeBus. The company did not do so. It received the benefit of the services performed by him. Under his arrangement with the general agent of the company, the compensation for those services was to be applied on the premiums on the policies held by DeBus. The plaintiffs are not seeking to recover compensation for the services performed by DeBus, but are trying to show that his commissions were applied on the premiums on his policies. The defense that DeBus did not have a license or certificate from the insurance department of Colorado is not good.

7. Another matter urged to support the contention of the defendant on the demurrers to the evidence of the plaintiffs is that the evidence did not show that DeBus performed the conditions of the contract. With this contention, the court cannot agree.

8. Another proposition is that "the court erred in refusing proper instructions asked by the defendant." The defendant requested twenty-three instructions, seventeen of which are set out in seven pages of the abstract, and the defendant complains of the refusal of the court to give ten of them. All have been examined, and the court is unable to say that prejudicial error was committed in the refusal of the court to give any of them.

9. Another proposition is that "the court below erred in its instructions given to the jury." The instructions of the court cover thirty-nine pages of the abstract. There is much repetition in them. It would be almost impossible for a trial judge to write thirty-nine pages of instructions and not make some mistakes. There were mistakes in these instructions, the most prominent one of which will be noticed. The court by its instructions left to the jury the construction of the contract between Doyle and Raley and the insurance company on the one side and DeBus on the other. The court should have told the jury what the effect of the contract was; but the jury, under the instructions given, by its verdict construed the contract as the court should have construed it. For that reason, there was no prejudicial error committed by the court in permitting the jury to construe the contract.

10. The defendant argues that the contract between the defendant and DeBus was a contract between Doyle & Raley, the general agents of the company, and DeBus, and that any obligations arising under the contract in favor of DeBus were the obligations of Doyle & Raley and not the obligations of the company, and for that reason Doyle & Raley could not discharge their debt to DeBus by excusing him from paying the premiums on the policies. The principle of law contended for by the defendant is correct, but its construction of the contract is wrong. The contract among other things recites:

"Doyle & Raley, General Agent of the Missouri State Life Insurance Company of St. Louis, Mo., hereinafter called the General Agent, and William H. DeBus, of Holly, Colorado, hereinafter called the Agent, for the considerations hereinafter expressed, agree together as follows:

"1. This contract shall become effective on the 14th day of October, 1918, and the service of the Agent shall begin on that date.

"2. The General Agent does hereby appoint the Agent as Special Agent of the Company, for the purpose of procuring in person applications for insurance on the lives of individuals residing in Holly, and vicinity."

Throughout the contract, which covers nine pages of the abstract, the terms "General Agent" and "Company" are used in the sense that the obligation of one is the obligation of the other, and that the rights of one are the rights of the other. The closing language of the contract is as follows:

"This agreement cannot be modified or changed by any verbal promise or statement by whomsoever made and shall not be binding upon the Company until it shall have been approved by its President or other executive officer.

"In Witness Whereof, the parties have hereunto in triplicate affixed their respective signatures the day and year first above written.

"The foregoing agreement is hereby approved.

DOYLE & RALEY, *General Agents.*
(Signed). WILLIAM H. DEBUS, *Agent.*
(Signed) H. V. DONNELLY, *Assistant Secretary.*"

This shows a contract between the company and DeBus. The company agreed to pay DeBus commission for his services. Commissions were earned, which the company holds, and it cannot escape giving credit therefor.

11. The defendant argues that "the court erred in overruling the motions filed by the defendant in each of the cases to set aside the general verdict and the special findings." The motions contained the grounds usually found in motions for new trial, and in addition thereto, each motion contained the following:

"The general verdict is in whole contrary to the evidence and is not supported by any evidence, and the special verdict consisting of the special findings returned with the general verdict and each finding of the jury are in whole and in every part thereof contrary to the evidence and none of said findings are supported by any evidence."

This is a very sweeping allegation and did not direct the attention of the trial court to anything in particular. The defendant in its brief attacks eleven of the twenty-two findings of the jury. In each instance, the contention is that the finding of the jury was not supported by the evidence, or was contrary to the uncontradicted evidence, or both. The plaintiffs answer these contentions of the defendant in a general way without pointing out the evidence that supports the several findings of the jury, except a part of that which supports the third finding. The third question and its answer read as follows:

"Did Wm. H. DeBus execute and deliver in the State of Colorado to Doyle & Raley, general agents, a promissory note in the sum of $150.30 for each of the first year's premiums on each of the policies sued on in these actions? Answer. No."

If there is a pivotal question and answer in the findings of the jury, it is the third question and its answer. If no notes were given for the first year's premiums on the policies, there was $450.68 commissions to apply on the second and third years' premiums. If notes were given for the first year's premiums, the credit of $450.68 would have been exceeded by the first and second year's premiums. There was some evidence to support the answer to the third question. The policy recited that the first premiums had been paid. That was evidence of the payment without anything more. Christman, the plaintiff in one of the cases, testified that he had a conversation in 1920 with Doyle, the general agent of the defendant, and that in that conversation, Doyle had said that the premiums for the first two years on both the policies had been paid, although Christman testified that in the conversation there was a dispute in regard to the premiums for the second year.

In the fifth and seventh questions, the jury found that the defendant held certain notes signed by DeBus—the receipt for one of those notes recited that the note was given for the annual premium on one of the policies due on October 5, 1918, and the other receipt recited that it was given for the annual premium due on the other policy on February 11, 1919. Under the findings of the jury, $750.68 must have been paid on the premiums of the two policies, and the notes mentioned in findings No. 5 and 7 must have been paid. The findings of the jury may be inconsistent and somewhat contradictory, but that question is not mentioned in the motion to set them aside, or in the assignment of errors, and it is not argued in the briefs.

A number of other matters are argued by the defendant in its brief. Each has been examined. No prejudicial error has been shown.

The judgment is affirmed.

MARSHALL, J.: I cannot concur in the conclusions reached and therefore dissent.

BURCH, J., concurs with Marshall, J.

HARVEY, J. (dissenting): In my judgment there is no competent

evidence, substantial in character, which tends to show that the second premium was paid upon either of the policies. There is written evidence which clearly shows that such premiums were not paid. The demurrer to the evidence should have been sustained.